273 So.2d 694 (1973)
Louie M. CYR et al.
v.
LOUISIANA INTRASTATE GAS CORPORATION.
No. 9096.
Court of Appeal of Louisiana, First Circuit.
February 1, 1973.
Rehearing Denied March 14, 1973.
Leon E. Roy, Jr., New Iberia, for appellants.
Jack J. Cousin, New Iberia, for appellee.
Before LANDRY, TUCKER and PICKETT, JJ.
*695 LANDRY, Judge.
Plaintiffs-owners, Louie M. Cyr, Charles M. Cyr, Marjorie Cyr Bard, Emily Cyr Bridges, Charles H. McGowen and Rena Moresi McGowen, and their lessee, Patout Roane, Inc. (Appellants), appeal from judgment dismissing their action to rescind a servitude agreement held by defendant (Appellee), for construction, operation and maintenance of one or more gas transmission lines across an 80 acre tract of land belonging to Appellant-owners and situated in St. Mary Parish. Rescission is sought because of the alleged breach of a servitude provision requiring the original grantee (Appellee's predecessor in title) to "bury such pipe lines so that they will not interfere with the cultivation of the land...." Alternatively, by this action instituted in 1970, Appellants seek specific performance in that Appellee be required to re-lay a pipe line (originally laid in 1943, when the land was used for rice farming), to a greater depth so as not to interfere with Lessee's contemplated use thereof for the purpose of growing sugar cane. The trial court sustained defendant's exception of ten years prescription predicated upon LSA-C.C. art. 3544. We affirm.
The basic facts, except as otherwise noted, are undisputed. On November 2, 1942, Appellants' ancestor in title executed a servitude in favor of defendant's author in title permitting the construction of one or more oil transmission pipe lines across subject property. Pursuant to the agreement, a line was laid across the property, the work being completed during the year 1943. When the servitude was granted, and also when the pipe line was laid in 1943, plaintiff's property was used for the growing of rice, although the predominant crop in the area was sugar cane. The amount of rice land in the area, as compared to acres in sugar cane was then, and is presently, approximately 3,500 acres of rice to 40,000 acres of sugar cane. Subject lands continued to be used for rice farming until 1970, when lessee attempted to prepare the land for sugar cane farming. It was then discovered that the line was not laid deep enough to permit tilling for sugar cane purposes. The line also passed through property of the Kilgore Planting Company to the east of subject tract, and the lands of D. C. Roane to the west of Appellants' land. Both the Kilgore and Roane tracts were devoted to the growing of sugar cane when the line was laid, and are presently being so used. On the Kilgore tract, the line was buried an average depth of 2.27'; on the Roane tract, the line was laid an average depth of 2.02'; on Appellants' land, the average depth is 1.60'. All three of these tracts are presently being farmed by Patout-Roane, Inc. It is conceded that due to the approximately six inch deviation in depth of the line as it crosses Appellants' lands, as compared to the depth on the adjoining estates, that portion of subject property affected by the servitude cannot be utilized for the growing of sugar cane. It is further conceded the line does not interfere with the raising of sugar cane on the aforenamed adjoining properties.
Appellants concede that an action which seeks to rescind a contract, or demands specific performance of the agreement, or claims damages for breach thereof, is subject to the liberative prescription of ten years as provided by LSA-C.C. art. 3544. See also, R.E.E. DeMontluzin Co. v. New Orleans & N.E.R. Co., 166 La. 822, 118 So. 33; Southwestern Improvement Co. v. Whittington, La.App., 193 So. 483; Levin's Auction Exchange v. Samuels, La.App., 28 So.2d 340; American Heating & Plumb. Co. v. West End Country Club, 171 La. 482, 131 So. 466; United Carbon Company v. Mississippi River Fuel Corp., 230 La. 709, 89 So.2d 209.
Appellants first contend the obligation to bury the line sufficiently deep to permit cultivation of the land is a continuing duty which the contracting parties contemplated would apply to future farming operations as well as those in force when *696 the servitude was granted. On this basis, Appellants urge there was no violation of the agreement until 1970, when the lessee attempted to convert the land from rice to sugar cane farming. In support of this position, Appellants point to language in the agreement which gives the grantee the right to lay a second line, and which also obligates the grantee to pay all damages arising from operation and maintenance of the lines. These requirements, according to Appellants, indicate intent to render continuing all of the obligations undertaken by the grantee, including the duty of burying the lines sufficiently to allow cultivation. In further support of this position, Appellants maintain the servitude agreement was confected by Appellee's author in title, therefore any ambiguity therein should be construed adversely as to Appellee and favorably toward Appellants pursuant to LSA-C.C. arts. 753 and 1957. In this latter regard, Appellants suggest that had grantee so intended, it could have limited its obligation by employing in the servitude agreement such terms as "present cultivation" or crops "presently growing."
Conversely, Appellee suggests Appellants' claims are without foundation because Appellants are not seeking damages caused by operation or maintenance of the line, but rescission of the agreement for alleged failure to comply with the contract, and alternatively, for specific performance of the duty to lay the line deep enough to allow cultivation.
It is basic law that courts are bound to give legal effect to contracts according to the true intent of the parties thereto. It is the common intent, that is, the intent of all parties, which the courts must seek to determine from the words of the agreement when the contract terms are clear and explicit and do not lead to absurd consequences. LSA-C.C. art. 1945.
A fair interpretation of the agreement, considering all concerned knew that sugar cane was the principal crop grown in the area at the time of execution, leads us to conclude it was intended that the line be initially buried sufficiently deep to allow cultivation of any and all crops then being raised in the area, including sugar cane. It would indeed be ridiculous and absurd to conclude the parties intended the line be buried only deep enough to permit grantor's current use of the land for rice farming, and that the line would be lowered at a future date if grantor or his assigns changed to another crop such as sugar cane. Such an agreement is totally incompatible with common sense and good reason. The only logical interpretation to be accorded the servitude is that the parties contemplated the line would be initially buried at the proper depth, and that there would be no continuing or future obligation on the grantee in this respect.
It is obvious that this obligation was breached by the grantee at the time the line was laid in 1943. It follows that plaintiff had a period of ten years from that time in which to seek rescission for the breach, or to require specific performance of the contract provision. Having failed to exercise their rights within the prescriptive period, Appellants' claims have prescribed. LSA-C.C. art. 3544, and authorities hereinabove cited.
In the alternative, Appellants maintain the ten year prescriptive period running against their cause of action was suspended pursuant to the common law doctrine "contra non valentem agere nulla currit praescripto", which is recognized by our courts. In this regard, Appellants contend their ancestor in title had a right to and did assume that grantee fulfilled his duty to bury the line at a depth which would permit the raising of sugar cane. Appellants point out that, inasmuch as the adjoining properties have been cultivated in sugar cane these many years by lessee, Patout-Roane, Inc., there was no reason to believe or suspect that the servitude agreement had been breached with respect to subject tract. Appellants additionally note that, *697 once the line was buried, there was no way to determine that it would interfere with the growing of sugar cane thereon until such use of the land was attempted. Consequently, according to Appellants, they were lulled into a false sense of security by defendant's concealment of this vital fact.
The trial court rejected Appellants' contention that the doctrine of "contra non valentem agere nulla currit praescripto" was applicable herein. The lower court so held upon finding no evidence to warrant the conclusion that the breach in question was concealed by defendant or defendant's ancestor either by design, trick, contrivance or subterfuge. The trial court also declined to apply the doctrine because it found that Appellants failed to show they lacked knowledge of the true situation, or that they were diligent in attempting to determine that the contract had been complied with when the pipe line was installed. Appellants maintain the lower court erred in requiring, as a condition precedent to application of the foregoing principle, that the party invoking same establish actual concealment of facts or willful deceit upon the part of the party pleading prescription. Appellants make no claim of fraud, connivance or affirmative action by the original grantee or defendant to conceal the breach. Nevertheless, Appellants contend their mere ignorance of the true depth of the line and defendant's failure to disclose the breach is sufficient ground to warrant invocation of the doctrine in question. In so contending, Appellants rely principally upon Freestate Industrial Development Company v. T. & H., Inc., La.App., 188 So.2d 746, and Gage v. Heins, La.App., 197 So.2d 699.
Freestate, above, is inapposite herein. Plaintiff, in Freestate, sought to prohibit an unlawful abuse of the predial servitude owed by his estate to defendant's estate. Defendant plead the prescription of one year provided by LSA-C.C. arts. 3536 and 3537. The court held that the prescription provided by Articles 3536 and 3537, above, commences from the date the landowner has reasonable ground to believe his property has been damaged, and it is upon this pronouncement that Appellants rely herein. However, the court, in Freestate, held the plaintiff's action did not lie in tort, but came within the ambit of LSA-C.C. art. 660, and that Articles 3536 and 3537, above, had no application to such an action. The language relied upon by Appellants in Freestate, above, was not applied in that instance, neither is it applicable in this instance which involves LSA-C.C. art. 3544.
Gage, above, involved application of the prescriptive period of Article 3544, above, to an action in warranty based on misrepresentation in a sale that no back taxes were due on the property conveyed. In applying the prescriptive period provided in Article 3544, above, the court held that plaintiff was entitled to rely on the representation, and that prescription did not commence to run until plaintiff acquired knowledge of the fact that back taxes were due on the property. In Gage, defendant was guilty of a false representation. Gage is not authority for the proposition that concealment by silence alone suffices to suspend the running of the prescriptive period provided in Article 3544.
We note numerous authorities holding that the doctrine in question has been held limited to instances where defendant has concealed facts or committed other acts which hinder, impede or prevent plaintiff from ascertaining knowledge of the relevant facts. See for example, Cartwright v. Chrysler Corporation, 255 La. 598, 232 So.2d 285; Ayres v. New York Life Insurance Company, 219 La. 945, 54 So.2d 409; Pope v. Employers Liability Assur. Corporation, La.App., 14 So.2d 105; Cruze v. Life Insurance Co. of Virginia, La.App., 184 So. 735.
However, the type of concealment giving rise to application of the doctrine of "Contra *698 non Valentem" is discussed in Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714, and Succession of Kretzer, La. App., 170 So. 906, which latter authority quotes the former as follows:
"In Littlefield v. City of Shreveport, 148 La. 693, 694, 87 So. 714, 716. Justice Provosty, as organ of the court, said, in speaking of the case of Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598 (1916): `That decision makes a clear distinction between the activity, or machinations, of a debtor for lulling his creditor into a false security, and his mere passivity. Mere passivity cannot arrest the course of prescription. Good faith not being required on the part of the person pleading this prescription, etc. C.C. art. 3550.'
* * * * * *
"A review of the authorities reveals that the Supreme Court has limited the application of the doctrine of `Contra non valentem' to cases where the debtor conceals from the creditor the fact that the creditor has a legal right to enforce. However, the course of prescription will not be suspended where the debtor remains passive and does not act which deprives the creditor of the knowledge of the existence of the right."
Any doubt concerning whether concealment by silence alone suffices as the basis for application of the doctrine of "Contra non Valentem" was removed by Smith v. Tyson, 193 La. 571, 192 So. 61, in which the following appears:
"`The above-cited decisions of the Supreme Court of Louisiana are in line with the general jurisprudence of the country. Statutes of limitation are... favored in the law. Mere ignorance of one's rights will not toll the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable diligence on the part of plaintiff and the means of knowledge are the same in effect as knowledge itself. Anderson v. Gailey (D.C.) 33 F.2d 589; Insurance Co. of North America v. Parr (C.C.A. [4th Cir.]), 44 F.2d 573; Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807; United States v. Oregon Lumber Co., 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261. We know of no decision, either of controlling authority or persuasive, holding that mere ignorance on the part of the creditor will toll the statute.' (Italics ours.)"
* * * * * *
"Nor can the mere passivity of the defendants in this case arrest the course of prescription, in the total absence of allegation or proof of machinations upon their part lulling plaintiff into a false security."
The record shows only that defendant's author in title breached the contract as to Appellants, and passively concealed its wrongdoing merely by remaining silent. The record is totally devoid of proof that the breach was concealed by virtue of ruse or misrepresentation or that anything was done to hinder, impede or prevent Appellants from ascertaining the true facts and circumstances. Under these circumstances, the trial court properly held the doctrine of "Contra non Valentem" was inapplicable.
The judgment of the trial court is affirmed at Appellants' cost.
Affirmed.