336 So.2d 925 (1976)
Perry ELLIOTT, Plaintiff-Appellant,
v.
LOUISIANA INTRASTATE GAS CORPORATION, Defendant-Appellee.
No. 5563.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1976.
Preston N. Aucoin, Ville Platte, for plaintiff-appellant.
John L. Vidrine, Ville Platte, for defendant-appellee.
Before MILLER, DOMENGEAUX and WATSON, JJ.
MILLER, Judge.
Plaintiff Perry Elliott appeals the judgment denying a mandatory injunction which he sought to order defendant Louisiana Intrastate Gas Corporation to either remove or rebury its pipeline to the depth specified in the servitude agreement. Defendant *926 answers the appeal, seeking a reduction of the $2,500 in damages awarded to Elliott. We reverse and issue a mandatory injunction.
On September 9, 1974 landowner Elliott granted a servitude to LIG on LIG's servitude form; this agreement, at Elliott's insistence, specifically required an amendment in typewritten language requiring LIG to bury its 16" pipeline "four feet" to be measured from ground level to the top of the pipe. This amendment was accepted by LIG. A week or two after the pipeline was laid across his property, Elliott discovered that almost all the line was buried at a shallower depth; a depth averaging 40 inches below the surface. Elliott sought counsel; his attorney corresponded with LIG to request they rebury the pipeline or remove it. On receiving no satisfaction, Elliott promptly filed suit, explicitly praying for a mandatory injunction to order defendant LIG to remove its pipeline or rebury it to the depth called for in its servitude agreement.
The trial court rejected Elliott's prayer seeking nullity of the servitude agreement and, alternatively, a mandatory injunction. On finding Elliott failed to show that the 8 inch difference between the contracted and actual depths would cause Elliott irreparable injury, the court awarded him $2,500 in damages for "some mental anguish, frustration, etc." Elliott appealed and now seeks the mandatory injunction to order LIG to either remove the pipeline or dig it up and rebury it at the proper depth.
Elliott testified that his reason for incorporating the "four foot depth provision" in the servitude agreement was in anticipation of possible future uses of part of his 97 acres; he anticipated one problem might arise when he could start farming rice on the land. It was anticipated that the government might change its policy which prohibited rice farming except on tracts previously farmed to rice, and he was correct. At Tr. 25, he anticipated a problem might arise should he desire to dig a canal.
LIG countered with testimony that irrigation canals could be constructed without digging to a depth of four feet; in addition, sub-soil plowing would disturb the earth surface to a depth of only 24 inches. At trial, Elliott's land was in pasture and he admitted that the pipeline had not caused a problem other than his worry and frustration. LIG also established that there was a 30" minimum safety depth imposed by federal and state governments for low density housing areas such as the area where Elliott's land is located.
The trial court committed error in requiring Elliott to show irreparable injury as a prerequisite to granting a mandatory injunction ordering LIG to either remove or rebury its pipeline to the contracted 48" depth.
In Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972), the Supreme Court affirmed the trial court's award of a mandatory injunction which required defendants to remove obstacles erected to the drainage of waters from Poole's dominant estate through Guste's servient estate. The court there ordered defendant to remove levees and stated that the traditional common law doctrine of injunctive relief as an equitable remedy, available only where the damage remedy was inadequate, was not necessarily applicable to Louisiana, "with its different civilian procedural background, and where the injunction has historically been recognized as a remedy available to protect possession of property, cf. La.C.Civ.P. Art. 3663(2)." 261 La. 1110 at 1126-7, 262 So.2d 339 at 345.
That reasoning applies to this action for the removal or reburying of a pipeline. The shallow depth of this pipeline encroaches on Elliott's ownership of his property and the mandatory injunction is available under LSA-C.C.P. art. 3663(2) to protect Elliott's possession of his property. See Indian Bayou Hunting Club, Inc. v. Taylor, 261 So.2d 669 (La.App. 3 Cir. 1972); Yiannopoulos, Work of the Louisiana Appellate Courts for the 1972-73 Term, Property, 34 La.L.Rev. 207 at 217 (1974).
LIG negotiated for this single pipeline servitude and was able to obtain it only by *927 agreeing to bury its pipeline at least 48" below the surface measured from the top of the pipeline. Elliott discovered LIG's violation immediately after the line was installed and made prompt demand that LIG comply with the condition under which LIG obtained the servitude. The servitude is for an indefinite period and Elliott anticipated that future uses, known and unknown, would be better accommodated if the line was buried at least 48" below the surface. LIG agreed to this request, then installed its line in total disregard of the condition.
Although Elliott's present use of his land is not inconvenienced by a 40" deep pipeline, Elliott is entitled to enforce a reasonable condition for the grant of the servitude, one which within fifteen or fifty years might be immensely valuable to him or his successors in title. If he does not enforce his contract now, LIG will prescribe to the right to maintain its pipeline at the 40" depth. Cyr v. Louisiana. Intrastate Gas Corporation, 273 So.2d 694 (La.App. 1 Cir. 1973). Should Elliott or his successors in title later have a use for the land down to the 48" level, he could expect expensive, and possibly impossible, conditions for getting the line placed to the 48" depth.
The Cyr case, supra, reinforces our conclusion that the remedy of mandatory injunction is properly available to Elliott. Although Elliott has not shown irreparable harm, nor indeed that the improper burial of the pipeline will interfere with his immediate plans for the property, he has only ten years from the date of the agreement to seek rescission or specific performance; should this pipeline cause him difficulty after the ten-year period, he will have no remedy against LIG or its successors, no matter how severe his injury. This is made clear by Cyr v. Louisiana Intrastate Gas Corporation, 273 So.2d 694 (La.App. 1 Cir. 1973), a case factually similar to the present one. There, landowner sought to rescind a servitude agreement because of a breach of the servitude provision to bury the lines so that they would not interfere with cultivation of the land. Since the agreement was entered into in 1942, and suit was filed in 1970, the court refused to grant rescission or specific performance on the basis of the LSA-C.C. art. 3544 ten-year prescription. This decision was made despite the fact that landowners' lessee discovered the defect only when he decided to prepare the land for sugarcane farming in 1970. While there was an obvious breach of contract, the remedy was lost by prescription.
In Poole v. Guste, supra, the court recognized that the relief of the mandatory injunction could be denied where large sums of money would have to be spent disproportionately; that is, in exceptional situations, compensatory damages would be granted instead, based on a balancing of equities.
LIG has argued in brief that hardship would be imposed on the general public if a mandatory injunction issued because countless numbers of customers depend on this pipeline. However, this violation was called to their attention before the line was in service. There is no evidence in this record setting forth the cost involved in digging up the pipeline or reburying it to the required depth, nor is there evidence indicating inconvenience and/or hardship which may be imposed on the general public. We conclude that this is not a case where the "balancing of equities" requires only an award of compensatory damages.
LIG also contends that Elliott's land is burdened by two other servitudes paralleling its own and suggests Elliott's future uses will be inhibited by these other servitudes. One servitude was granted for an overhead electric line and one for a pipeline. Nothing in the record suggests that the first pipeline is buried to a depth of less than 48". And if it is buried to a lesser depth, nothing in the record suggests the servitude agreement was conditioned on burial of that line to a depth of 48".
If LIG intended to rely on these other lines as a basis for supporting its refusal to bury its line to a 48" depth, the time to confront that issue was at the negotiating table before they agreed to that condition. We will not permit LIG to contract for this reasonable condition, which was important *928 to the landowner, and then allow them to take advantage of this landowner on the basis that landowner could not enforce his contract.
LIG is here required to do what it willingly undertook to do as a condition for obtaining the servitude.
Accordingly the judgment awarding $2500 in damages is set aside; Louisiana Intrastate Gas Corporation is ordered to remove the pipeline from landowner Elliott's property or, in the alternative, to rebury the pipeline to the depth required by its servitude agreement. LIG is granted one year from the date this judgment becomes final to comply with this injunction. Costs of court both at trial and on appeal are taxed to defendant LIG.
REVERSED and RENDERED.
WATSON, J., concurs and assigns written reasons.
WATSON, Judge (concurring):
I concur in the result which requires the pipeline company to fully comply with the agreement between the parties, although I have reservations about whether the discrepancy (eight inches or less) is a serious detriment to the landowner, as a practical matter.