(On Remand from the Supreme Court of Louisiana)
TERRI F. LOVE, Judge.
_JjThis matter arises from a remand from the Louisiana Supreme Court of a writ[1] *724 decided by this Court wherein we denied the relator’s application based on the peremptory exception of prescription. We now address the matter following oral argument and grant the writ.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Tiffany Adams (“Ms. Adams”) was injured in a car accident and subsequently had surgery, which was performed by Dr. Raymond DeCorte (“Dr. DeCorte”) to repair a hernia in January 1995. After a second car accident, Ms. Adams’ hernia recurred. Dr. DeCorte repaired the hernia using Marlex[2] mesh (“Marlex”) in November 1995.
In October 1998, Ms. Adams sought treatment for obesity from Dr. Ruary O’Connell (“Dr. O’Connell”). As a result, Dr. O’Connell performed a transverse gastric stapling, ROUX-en-y Gastrojejunosto-my, and cholecystectomy in October 1998. During the procedures, he allegedly cut through the existing mesh and sutured it back. Around March 2, 1999, Dr. O’Con-nell detected a small mid-line incisional hernia in Ms. Adams. He repaired the hernia on or around March 15,121999, and Ms. Adams alleged that she requested the use of Marlex to prevent a recurrence based on her previous knowledge of and success with Marlex.
On March 25,1999, Ms. Adams noticed a sudden drainage of fluid from her mid-line incision. She telephoned Dr. O’Connell, who instructed her to go to the emergency room. Ms. Adams visited the emergency room at East Jefferson General Hospital and received antibiotics. On March 26, 1999, and March 29, 1999, Ms. Adams had post-operative visits with Dr. O’Connell regarding the drainage. On May 19, 1999, Ms. Adams visited Dr. O’Connell and was instructed to return in six months. However, she did not return to Dr. O’Connell’s office, because, in her own words, she was “ticked” that Dr. O’Connell had not used Marlex mesh in her hernia repair. He had informed her at one of the earlier postoperative visits that he did not use Marlex for her surgery, because it was not needed for her type of hernia, and that she should not have any problems even though the mesh was not used.
Ms. Adams discovered a small “pea sized” hernia in late April or early May 1999. On June 28, 1999, Ms. Adams visited Dr. Xeith Samuels (“Dr. Samuels”), her obstetrician/gynecologist, with the suspicion that she was pregnant. Dr. Samuels diagnosed her with a mid-line incisional hernia at the June 28, 1999 visit. In her deposition when she was asked whether she believed at the time of the June 28, 1999 visit that Dr. O’Connell’s failure to use mesh in her hernia repair had caused the new hernia, Ms. Adams responded, “That was my impression.”
On October 27, 1999, Ms. Adams visited Dr. DeCorte for a consultation about her then existing hernia. Ms. Adams alleges that Dr. DeCorte informed her at this appointment that the failure of Dr. O’Con-nell to use Marlex caused her hernia to recur. In fact, Ms. Adams testified in her deposition that when she saw |3Pr. De-Corte in October, she “already knew” the cause of the hernia but that Dr. DeCorte confirmed it for her.
Following her recovery from a caesarian section, Dr. DeCorte performed a ventral hernia repair with Marlex on May 4, 2000. Ms. Adams suffered no recurrences or *725 subsequent problems after the May 2000 hernia repair.
On August 18, 2000, Ms. Adams filed a medical malpractice complaint with the medical review panel (“the panel”), alleging that Dr. O’Connell used substandard care when he failed to use Marlex on her hernia repair. On October 2, 2001, the panel unanimously held that Dr. O’Connell did not breach the medical standards of care.
Accordingly, on October 19, 2001, Ms. Adams filed a petition alleging that Dr. O’Connell was negligent in failing to utilize Marlex and that she did not learn that the lack of Marlex usage was medically inappropriate until October 27, 1999. Ms. Adams then filed a supplemental and amending petition on July 11, 2003, alleging that she “specifically requested that he use mesh to repair the recurrent hernia because the last time she had a recurrent hernia a mesh was used.” Additionally, she urged that Dr. O’Connell agreed to use Marlex. After she discovered that Dr. O’Connell did not use Marlex, Ms. Adams alleges that Dr. O’Connell “lead her to believe that he fixed the hernia appropriately with sutures and she had nothing to worry about.” She alleged that the informed consent form she signed did not include a statement that Dr. O’Connell would ignore her request for Marlex, that he did not inform her of “alternative procedures,” and by doing all of the above, he deviated from the appropriate standard of care.
Dr. O’Connell then filed a peremptory exception of prescription alleging that Ms. Adams did not file within one year of actual or constructive knowledge of Dr. |40’ConneH’s failure to use Marlex. The trial court denied the exception with no reasons and Dr. O’Connell sought writs to this Court.
This Court denied Dr. O’Connell’s writ finding that two reasonable views existed as to what date Ms. Adams had actual or constructive knowledge to trigger the running of prescription. The Louisiana Supreme Court then granted Dr. O’Connell’s writ and remanded the matter to this Court for briefing, argument, and opinion. This Court heard arguments and this opinion follows.

STANDARD OF REVIEW

Appellate courts review a trial court’s factual findings with the manifest error/clearly wrong standard. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In order to reverse findings of fact, the reviewing court must find that no reasonable factual basis exists for the findings and the findings are clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). The fact-finder’s conclusion must be a reasonable one. Stobart v. State, Through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993).

PRESCRIPTION

The exception of prescription is a peremptory exception. La. C.C.P. art. 927. “[PJrescriptive statutes are strictly construed against prescription.... ” Carter v. Haygood, 04-0646, p. 10 (La.1/19/05), 892 So.2d 1261, 1268. If amendment of the petition can cure the basis for the peremptory exception, the trial court “shall order such amendment within the delay allowed by the court.” La. C.C.P. art. 934. The exceptor bears the burden of proof at the trial of the peremptory exception. Spott v. Otis Elevator Co., 601 So.2d 1355, 1361 (La.1992). However, the burden shifts to the plaintiff if prescription is evident on the face of the pleadings. Williams v. Sewerage & Water Bd. of New Orleans, 611 So.|2d5 1383, 1386 (La.1993).
*726 La. R.S. 9:5628 provides the prescriptive period for medical malpractice and reads, in pertinent part:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
“Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.” Campo v. Correa, 01-2707, pp. 11-12 (La.6/21/02), 828 So.2d 502, 510. Even if a plaintiff does not have actual knowledge entitling him to bring a suit, constructive knowledge that excites attention and puts the “injured party on guard and call for inquiry” is sufficient. Id. at p. 12, 828 So.2d at 510-11. “Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription.” Id. at p. 12, 828 So.2d at 511.
However, mere apprehension “that something is wrong is not sufficient to start prescription unless plaintiff knew or should have known by exercising reasonable diligence that his problem condition may have been caused by acts of malpractice.” Gunter v. Plauche, 439 So.2d 437, 439 (La.1983). “[Pjrescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment.” Griffin v. Kinberger, 507 So.2d 821, 823-24 (La.1987). “[KJnowledge that an undesirable condition has developed ... | rafter medical treatment does not equate to knowledge of everything to which inquiry might lead.” Campo, 01-2707, p. 15, 828 So.2d at 512-13.
Dr. O’Connell asserts that Ms. Adams filed her claim with the medical review panel one year and five months after the date of her injury; thus, her alleged malpractice claim prescribed. Ms. Adams avers that she did not discover that the failure to use Marlex, in March 1999, was inappropriate until October 1999. Thus, the claim had not prescribed on the face of the pleadings and Dr. O’Connell bore the burden of proving prescription.
Ms. Adams worked as a dental assistant, veterinarian technician, a medical assistant at the Pelican Outpatient Center in Hara-han, a medical assistant for a dermatologist, and as a medical assistant at East Jefferson’s after hours urgent care center. Thus, she has some medical knowledge.
However, Ms. Adams stated in her deposition that Dr. DeCorte informed her that Marlex was needed to prevent the recurrence of hernias. She also stated that she requested that Dr. O’Connell use Marlex for her hernia repair on March 15, 1999, because she did not want another hernia and that he agreed. In her deposition, Ms. Adams said that asking for Marlex was “just kind of common sense” because when Marlex was used she did not have a recurrent hernia. Ms. Adams stated that she knew she had a new hernia in late April or early May 1999. She stated:
I mean, it wasn’t big. It was like maybe a pea size. It wasn’t big at all. Like I said, it was, once again, when I was *727 taking a bath, I happened to sit up, and it was just — it was like a pinch that I felt, and it was a pain that, you know, a pain and a small little knot, I guess you could say, that you can see, when I would sit forward. And at that time, actually, the first time I remember mentioning anything to a physician was when I saw Dr. Samuels, about the hernia.
|7Ms. Adams’ visit with Dr. Samuels was in June 1999. Further, she stated that Dr. O’Connell informed her that he did not use mesh in one of the first post-operative visits, which was prior to May 19, 1999. Lastly, in regards to her knowledge that the hernia was allegedly caused by the lack of Marlex, she acknowledged, “[a]nd then I had the hernia repair from Dr. O’Connell, without mesh. And then, a month or two later, I end up with another hernia.” Ms. Adams admitted that she realized this around April 1999.
Ms. Adams alleges that Dr. O’Connell “lead her to believe that he fixed the hernia appropriately with sutures and she had nothing to worry about.” Dr. O’Connell stated that mesh was unnecessary for Ms. Adams’ surgery. Thus, Ms. Adams asserts that contra non valentem suspends the running of prescription. Ms. Adams relies upon the claim that she was an “innocent plaintiff’ that had “been lulled into a course of inaction in the enforcement or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights.” Carter v. Haygood, 04-0646, p. 12 (La.1/19/05), 892 So.2d 1261, 1269. The Louisiana Supreme Court further stated:
[prescription runs against a plaintiff who has knowledge of facts that a condition may be the result of improper-treatment only if there is no effort by the physician to mislead or cover up information available to the plaintiff through inquiry or professional medical or legal advice during the continuing treatment.
Id. at p. 19, 892 So.2d at 1273. In Carter, the doctor assured the plaintiff to “hang in there” and “that he would ‘get it right’ ” upon his “various efforts to remedy her problems.” Id. Additionally, the doctor in Carter repeatedly refused to give the plaintiff a copy of her medical records. Id. at p. 18, 892 So.2d at 1272.
We find that Carter is not dispositive as the case sub judice is ^distinguishable. Ms. Adams’ medical malpractice claim is based solely upon Dr. O’Connell’s failure to use Marlex, of which she learned during one of her first post-operative visits prior to May 19, 1999. Ms. Adams stated that she thought it was “common sense” to request the use of Marlex because she knew that it prevented recurring hernias. Also, Dr. O’Connell is not accused of repeatedly assuring Ms. Adams that she would get better if she continued treatment under his care. In fact, Ms. Adams was scheduled to return to Dr. O’Connell for a check-up six months after May 19, 1999. However, she never returned and Dr. O’Connell did not know about her recurrent hernia. Dr. O’Connell stated in his deposition that after reviewing Ms. Adams’ medical records after she left his care, that he believed the hernia occurred as a result of the infection. Ms. Adams stated that she first told Dr. Samuels about her recurrent hernia after she stopped treatment from Dr. O’Connell. Thus, Dr. O’Connell did not have the opportunity to lull Ms. Adams and prevent the running of prescription.
Thus, based on the above testimony of Ms. Adams, we find that Dr. O’Connell met his burden of proof that Ms. Adams had knowledge that her hernia was allegedly related to the failure of Dr. O’Connell to use Marlex prior to Dr. DeCorte telling *728 her it was medically inappropriate in October 1999. Even considering that prescription statutes are to be strictly construed, Ms. Adams admitted that she had knowledge in April or early May 1999, which connotes that her alleged malpractice claim prescribed prior to her August 2000 request for a medical review panel. Therefore, we find that it was manifestly erroneous for the trial court to deny Dr. O’Connell’s peremptory exception of prescription, as there was no other reasonable conclusion based on Ms. Adams’ deposition testimony.
| ¡DECREE
For the above-mentioned reasons, we grant Dr. O’Connell’s writ and find that the trial court committed manifest error when it held that Ms. Adams filed within the appropriate time period.
WRIT GRANTED.
LOMBARD, J., dissents.
BELSOME, J., dissents with reasons.

. Adams v. Ruary O’Connell, M.D., 06-0139 (La.App. 4 Cir. 5/5/06).

. Marlex mesh is a type of surgical mesh used in some hernia patients to lessen the chance of a recurrence.