CHAISSON, J.
In this medical malpractice case arising from alleged fraudulent concealment of a metal foreign object left in a patient during surgery, Gerard Lindquist appeals a May 8, 2018 judgment of the trial court sustaining an exception of prescription filed by Ochsner Clinic Foundation and Dr. Joseph M. Zavatsky. For the following reasons, we reverse the decision of the trial court.
FACTS & PROCEDURAL HISTORY
The facts of the case, as alleged in Mr. Lindquist's request for a medical review panel filed on September 14, 2017, with the Division of Administration are as follows:
On August 22, 2013, Mr. Lindquist underwent spinal surgery performed by Dr. *753 Zavatsky, an employee of Ochsner.[1] Mr. Lindquist was sent home that same day for recovery. The next day he went to the emergency room at Ochsner after experiencing an inability to stand as well as pain and weakness in his legs. Diagnostic studies (x-rays) from August 24, 2013, showed a metal artifact in the operative site in Mr. Lindquist's back. Mr. Lindquist was not informed of the presence of the artifact at that time by anyone at Ochsner or Dr. Zavatsky. Mr. Lindquist was discharged from the hospital, and sent home. The next day, August 25, 2013, he was readmitted to the hospital after continuing to experience pain and weakness. An MRI was performed which also evidenced the metal artifact in his spine at the site of the surgery, but Mr. Lindquist was again not informed of it by anyone. He was discharged on August 26, 2013.
Mr. Lindquist met with Dr. Zavatsky on November 15, 2013, and again on February 17, 2014, at which times he reported continuing symptoms of pain and weakness. He was not informed during either of these visits of the metal artifact, though the presence of the metal artifact is mentioned by Dr. Zavatsky in his November 15, 2013 progress notes following results of an x-ray he had ordered of Mr. Lindquist. Mr. Lindquist continued in Dr. Zavatsky's care through February 14, 2014, for pain and disability. At some point unknown to Mr. Lindquist, Dr. Zavatsky left Ochsner.
In the following years, Mr. Lindquist continued to experience pain and disability in his spine. On May 25, 2017, an MRI was taken at Ochsner and the metal artifact was again shown in Mr. Lindquist's back at the operative site. At this time, Mr. Lindquist was first told about the metal artifact by a doctor at Ochsner. Mr. Lindquist filed his claim for medical malpractice against Ochsner and Dr. Zavatsky with the Division of Administration a few months later on September 14, 2017.
On January 22, 2018, Ochsner and Dr. Zavatsky filed a peremptory exception of peremption pursuant to La. R.S. 9:5628 and La. R.S. 40:1231.8. At the hearing on the exception, the parties and the court agreed to construe the exception as a peremptory exception of prescription. In their memorandum in support of the exception and at the hearing on the exception, defendants argued that Mr. Lindquist's claims filed four years after his surgery fell outside the three year prescriptive period set forth for medical malpractice actions in La. R.S. 9:5628 and were therefore prescribed.[2] In opposition, Mr. Lindquist argued that defendants' conduct in failing to inform him of the metal artifact in his back constitutes fraudulent concealment and therefore, under the doctrine of contra non valentem , prescription on his claim did not begin to run until he was informed of its presence on May 25, 2017. In response, defendants argued that, even if the court were to consider application of contra non valentem , Mr. Lindquist was not prevented from bringing his malpractice suit within three years of the surgery because the x-rays and diagnostic images showing the metal object in his back were in his medical records which were always available to him.
The trial court rendered judgment sustaining defendants' exception of prescription and dismissed Mr. Lindquist's case *754 with prejudice. A subsequent motion for new trial filed by Mr. Lindquist was denied. Mr. Lindquist appeals the judgment sustaining defendants' exception of prescription.
DISCUSSION
This case presents a res nova issue for this Court: whether a health care provider, who has seen x-rays and MRIs showing a metal object that he left in a patient's back during surgery, and who fails to disclose such to the patient, has engaged in conduct that rises to the level of concealment, misrepresentation, fraud, or ill practices sufficient to trigger the application of the third category of contra non valentem to interrupt the prescriptive period set forth in La. R.S. 9:5628.
In our discussion below, we will address first the applicable standard of review before examining the applicability of contra non valentem in medical malpractice actions, including whether the conduct alleged here, i.e. , fraud by silence, may suspend prescription under La. R.S. 9:5628.
Standard of Review
Ordinarily, the exceptor bears the burden of proof at trial of the peremptory exception, including prescription. Woods v. Cousins , 12-100 (La. App. 5 Cir. 10/16/12), 102 So.3d 977, 979, writ denied, 12-2452 (La. 1/11/13), 107 So.3d 617. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Id.
At a hearing on a peremptory exception pleaded prior to trial, evidence may be introduced to support or controvert the exception. La. C.C.P. art. 931. In the absence of evidence, a peremptory exception must be decided upon the facts alleged in the petition with all of the allegations accepted as true. Lomont v. Bennett , 14-2483 (La. 6/30/15), 172 So.3d 620, 627. Furthermore, when no evidence is introduced at the hearing on the exception, the reviewing court simply determines whether the trial court's finding was legally correct. Felix v. Safeway Ins. Co. , 15-0701 (La. App. 4 Cir. 12/16/15), 183 So.3d 627, 631. In a case involving no dispute regarding material facts, but only the determination of a legal issue, a reviewing court must apply the de novo standard of review, under which the trial court's legal conclusions are not entitled to deference. Id.
The transcripts of this case show that no evidence was introduced by either party at the hearing on the exception prior to the trial court's ruling. Following the trial court's ruling, the court accepted, without defendants' objection, a copy of the request for a medical review panel and an affidavit from Mr. Lindquist supporting his allegations. At the hearing on the motion for new trial, the trial court sustained an objection raised by defendants to the introduction of additional evidence offered by Mr. Lindquist in support of his allegations. This evidence, which included an amended medical review panel request, a second affidavit of Mr. Lindquist, and excerpts from his medical records, was proffered by Mr. Lindquist and placed into the record by the trial court. Because the trial court did not consider any properly admitted evidence prior to its ruling, the manifest-error standard is not applicable, and we review the record de novo .
Prescription Under La. R.S. 9:5628
The prescriptive period for medical malpractice actions is set forth in La. R.S. 9:5628, which states in pertinent part:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws *755 of this state, or community blood center or tissue bank as defined in La. R.S. 40:1231.1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
The Louisiana Supreme Court in Borel v. Young , 07-0419 (La. 11/27/07), 989 So.2d 42, 74, on reh'g (7/1/08), examined this statutory language to determine whether the one and three-year time periods set forth are peremptive or prescriptive. In 1986, the Court had determined that these periods were prescriptive. Hebert v. Doctors Mem'l Hosp. , 486 So.2d 717 (La. 1986). In Hebert , the Court emphasized the importance of the distinction between peremptive and prescriptive periods:
[P]rescription prevents the enforcement of a right by legal action, [but] it does not terminate the natural obligation; peremption, however, extinguishes or destroys the right. ... [N]othing may interfere with the running of a peremptive period. It may not be interrupted or suspended...[a]nd exceptions such as contra non valentem are not applicable. As an inchoate right, prescription, on the other hand, may be renounced, interrupted, or suspended; and contra non valentem applies an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. (Internal citations omitted.)
Id . at 723.
On rehearing in Borel , the Court specifically found that legislative amendments since 1986 had not changed the character of the statutory limitation periods, and affirmed its holding in Hebert that both the one-year and three-year periods set forth in La. R.S. 9:5628 are prescriptive, with the qualification that the contra non valentem type exception to the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect. 989 So.2d at 69.
Contra Non Valentem
Recognizing that the medical malpractice statute is prescriptive and not peremptive in nature, and therefore is susceptible to suspension or interruption pursuant to contra non valentem , we next examine that doctrine more closely.
Contra non valentem agere nulla currit praescriptio ("prescription does not run against the party unable to act") is an exception to La. C.C. art. 3467, which states that prescription runs against all persons unless an exception is established by legislation. Lennie v. Exxon Mobil Corp. , 17-204 (La. App. 5 Cir. 6/27/18), 251 So.3d 637, 643, writ denied, 18-1435 (La. 11/20/18), 256 So.3d 994. The doctrine is an application of the long-established principle of law that one should not be able to take advantage of his own wrongful act. Nathan v. Carter , 372 So.2d 560, 562 (La. 1979).
The Supreme Court has recognized four circumstances in which contra non valentem prevents the running of prescription: 1) where there is some legal cause which prevented the court or its officers from taking cognizance of and acting on the plaintiff's actions; or 2) where there is some condition coupled with the *756 contract or coupled with the proceedings which prevented the plaintiff from suing or acting; or 3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; or 4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Lomont , 172 So.3d at 637, citing Fontenot v. ABC Ins. Co. , 95-1707 (La. 6/7/96), 674 So.2d 960, 963 ; Rajnowski v. St. Patrick's Hosp. , 564 So.2d 671, 674 (La. 1990) ; Corsey v. State, Through Dep't of Corr. , 375 So.2d 1319, 1321 (La. 1979). As the Supreme Court has stated, "[t]he equitable nature of the circumstances in each individual case determines the applicability of the [contra non valentem ] doctrine." Wells v. Zadeck , 11-1232 (La. 3/30/12), 89 So.3d 1145, 1154, citing Nathan v. Carter , supra . The Discovery Rule in Foreign Object Cases
This fourth category of contra non valentem , also known as the discovery rule, has been found by the Supreme Court to be limited in medical malpractice cases by the language of La. R.S. 9:5628. Borel , supra . The discovery rule, which focuses on what the plaintiff knew or should have known, is particularly germane in so-called "foreign object" cases. In the context of a medical malpractice action, a "foreign object" is one which is inadvertently left inside a patient during surgery. Such objects may include a sponge, laparotomy pad, or surgical gauze. Romero v. Bellina , 01-274 (La. App. 5 Cir. 9/25/01), 798 So.2d 279, 281, writ denied, 01-2852 (La. 1/11/02), 807 So.2d 237 ; Guilbeau v. St. Paul Fire & Marine Ins. Co. , 325 So.2d 395 (La. App. 3 Cir. 12/24/75) ; Johnston v. Sw. Louisiana Ass'n , 96-1457 (La. App. 3 Cir. 4/2/97), 693 So.2d 1195. Generally, under the theory of res ipsa loquitor , the presence of such a foreign object is considered prima facie evidence of negligence on the part of the medical provider such that a lay person can infer negligence and no expert testimony is required. See Pfiffner v. Correa , 94-0924 (La. 10/17/94), 643 So.2d 1228, 1233 ; Holt v. Richardson , 06-1323 (La. App. 4 Cir. 3/28/07), 956 So.2d 35, writ denied, 07-0887 (La. 6/15/07), 958 So.2d 1197.
In In re Med. Review Panel for Claim of Moses , 00-2643 (La. 5/25/01), 788 So.2d 1173, the Supreme Court considered the application of La. R.S. 9:5628's limited discovery rule in a foreign object case. In Moses , a patient brought suit in July 1997 against her health care providers for negligently failing to remove metal stitches during a procedure in December 1991. The patient argued that the three-year limitation on medical malpractice actions did not apply because the continued presence of the stitches acted as an ongoing wrong, causing her daily injury until they were discovered and removed. The Court specifically found that the defendant committed a single breach of duty in failing to remove the stitches, the presence of which was known by neither the defendant nor the plaintiff, and that the discovery rule embodied in the fourth category of contra non valentem could not be applied to indefinitely suspend the three-year prescriptive period for medical malpractice claims.[3] Id. at 1187. Notably, in Moses , and *757 other reported foreign object cases, neither the patient nor the health care provider was aware of the negligent act or the presence of the foreign object, and therefore the third category of contra non valentem , fraud, was not alleged or implicated.[4] The Fraud Exception in Medical Malpractice Cases
In considering the application of contra non valentem in those cases where a plaintiff has been prevented from exercising a right of action by fraud perpetrated by the defendant, Louisiana courts have long understood "[n]o law was ever enacted which contemplated the defeat of its purpose by fraud, and no court was ever organized which would knowingly permit a litigant to profit by his own wrong." Hyman v. Hibernia Bank & Tr. Co. , 139 La. 411, 425, 71 So. 598, 606 (1916).[5]
Since the enactment of La. R.S. 9:5628 nearly four decades ago, Louisiana courts have had numerous occasions to consider the application of the third category of contra non valentem to suspend or interrupt the running of prescriptive periods.[6] In Fontenot v. ABC Ins. Co. , the Louisiana Supreme Court articulated the limited circumstances in which the fraud exception of contra non valentem could operate to suspend or interrupt the running of prescription in medical malpractice cases:
The third category of contra non valentem applies when the health care provider himself has done some act effectually to prevent the victim from availing himself of his cause of action for medical malpractice. To trigger application of the third category, a physician's conduct must rise to the level of concealment, misrepresentation, fraud or ill practices.
*758 Fontenot v. ABC Ins. Co. , 95-1707 (La. 6/7/96), 674 So.2d 960, 963.
In Fontenot , the patient alleged that the doctor had fraudulently concealed or misrepresented that a drill bit had slipped during surgery causing the patient severe nerve damages. Upon reviewing the record, the Supreme Court found that, because the doctor had disclosed to the patient and her husband that the drill had slipped on the same day as the surgery, the doctor's conduct did not rise to the level of concealment, misrepresentation, fraud, or ill practices, and therefore the Court declined to apply the doctrine of contra non valentem to suspend the running of prescription on the patient's medical malpractice claim.
The Fontenot case illustrates that the main focus of inquiry in determining the application of contra non valentem under the third category is the conduct of the healthcare provider, though what the patient knows (which is the main focus of the inquiry under the fourth category of contra non valentem ) is still relevant to the analysis. Where a plaintiff has actual knowledge of the malpractice, the Court is unlikely to find the physician's conduct rose to the level of fraud, misrepresentation, or concealment such that it would prevent her from timely filing a claim. For example, in In re Jenkins , the Fourth Circuit declined to apply contra non valentem in a medical malpractice case to interrupt the running of prescription because the alleged wrongful conduct, the removal of an I-V needle from the patient's hand, was immediately apparent to the patient. 945 So.2d at 817.[7] On the other hand, where the plaintiff has no knowledge of the tortious act and is able to show fraudulent conduct on the part of the tortfeasor, prescription is suspended until the plaintiff is made aware of the truth of the matter. Lennie , 251 So.3d at 643.
The trial court in the case sub judice did not apply the standard set forth in Fontenot . Instead, the court applied a variation of the third category of contra non valentem known as the 'continuous treatment rule' set forth by the Supreme Court in Carter v. Haygood , supra . In Carter , a patient filed medical malpractice claims against her dentist for damages stemming from a dental procedure in which half the patient's teeth were extracted and ill-fitting partial dentures were implanted. The patient returned to the dentist several times due to complications from the initial procedure, during which times the doctor made repeated assurances to the patient to "hang in there" and attempted to correct his previous work. Following a dispute over payment for the corrective treatments, the dentist refused to see the patient and instructed her to seek treatment with a different health care provider.
Mrs. Carter filed a medical malpractice claim against the dentist, and, following a bench trial, the trial court found in her favor. On appeal the Third Circuit reversed in part the judgment of the trial court after finding that Mrs. Carter's malpractice claim stemming from the tooth extraction had prescribed because the extraction of a tooth is an act which is immediately apparent and Mrs. Carter had failed to file her claim within one year of the date of the extraction. In its reversal of the appellate court and reinstatement of the trial court's judgment, the Supreme *759 Court found that the dentist's actions and repeated reassurances in effect lulled the patient into inaction and therefore contra non valentem did apply to suspend the running of prescription on the patient's claims.
In reaching its conclusion, the Court's reasoning began with the observation that the third category has been held to encompass situations where an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of the defendant's failure to perform some legal duty whereby the plaintiff has been kept in ignorance of his rights. Carter , 892 So.2d at 1269, citing Crump v. Sabine River Authority , 98-2326 (La. 6/29/99), 737 So.2d 720, 730. Next, the Court focused on the special relationship between the patient and the health care provider which the Court found to be analogous to the special relationship between an attorney and client. The Court then articulated a 'continuing treatment rule' analogous to the 'continuing representation rule' in legal malpractice cases which would require a plaintiff who is aware of facts indicative of the malpractice to establish the existence of (1) a continuing treatment relationship with the physician, which is more than perfunctory, during which (2) the physician engaged in conduct which served to prevent the patient from availing herself of her cause of action, such as attempting to rectify an alleged act of malpractice.[8] Applying this new rule to the facts of the case, the Court found that prescription of Mrs. Carter's claims was suspended under the third category of contra non valentem .
The trial court in this case applied the continuous treatment rule and found that, because Mr. Lindquist was last treated by Dr. Zavatsky on February 17, 2014, and there was no indication of a further continuing relationship between them, Mr. Lindquist's claim had prescribed. In applying the continuous treatment rule rather than engaging in an analysis of the defendant's conduct to determine whether it rose to a level of concealment, misrepresentation, fraud or ill practices as set forth in Fontenot , the trial court legally erred. The application of the doctrine of contra non valentem is a fact driven analysis, and the facts of the case sub judice are distinguishable from those of Carter . In Carter , the Court examined the actions and conduct of a dentist dealing with a patient who was aware of what had gone wrong with her initial dental procedure: she had more than half of her teeth extracted and the partials placed did not fit properly. The patient relied on the assertions of the dentist that he would correct the problems, and, because the relationship between patient and doctor is one of trust and confidence, the patient was lulled by these reassurances into not bringing her claim. Both the dentist and the patient were aware of the initial tortious act.
In contrast, in this case, Mr. Lindquist alleges both that he was unaware a metal object was left in his back following surgery, *760 and that Dr. Zavatsky and Ochsner were aware of the foreign metal object, as evidenced by the notes in the medical record. A patient in such a situation has a reasonable expectation that his doctor will disclose to him material information of a medical error such as an x-ray showing a metal object at the site of his operation. The Court in Carter stated:
Prescription runs against a plaintiff who has knowledge of facts that a condition may be the result of improper treatment only if there is no effort by the physician to mislead or cover up information available to the plaintiff through inquiry or professional medical or legal advice during continuing treatment. (Emphasis added.)
892 So.2d at 1273.
According to the allegations in this case, Mr. Lindquist had no knowledge of the facts that the pain and weakness he experienced following surgery may have been caused by improper treatment. The continuous treatment rule as articulated in Carter is not applicable to the facts alleged in this case.
Fraud by Silence
Having determined that the continuous treatment rule was erroneously applied by the trial court to this case, we return to the previously articulated standard set forth in Fontenot to determine whether defendants' alleged conduct in this case rises to the level of concealment, misrepresentation, fraud, or ill practices which prevented Mr. Lindquist from timely filing his medical malpractice claim. In so doing, we consider the arguments put forward by defendants and accepted by the trial court that (1) silence alone, without additional affirmative acts of concealment, does not constitute fraud, and (2) there could be no fraud where the medical records were available to Mr. Lindquist.
Under La. C.C. art. 1953, fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.[9]
In the context of common commercial transactions, concealment by silence alone is insufficient for an application of contra non valentem . See Cyr v. Louisiana Intrastate Gas Corp. , 273 So.2d 694, 698 (La. App. 1 Cir. 3/14/73) citing , Smith v. Tyson , 193 La. 571, 192 So. 61 (1939). To find fraud from silence, there must be a duty to speak. Lomont , 172 So.3d at 629 ; Greene v. Gulf Coast Bank , 593 So.2d 630, 632 (La. 1992).[10] Louisiana law recognizes that the refusal to speak, in the face of an obligation to do so, is not merely unfair but is fraudulent. Id. , quoting Bunge Corp. v. GATX Corp. , 557 So.2d 1376 (La. 1990).[11] Such a duty to speak exists between *761 a physician and a patient.[12] See Pitre v. Opelousas Gen. Hosp. , 530 So.2d 1151, 1156 (La. 1988) (holding that a doctor who negligently performed a surgery who was aware of the failure of the operation owed the patients a duty to inform them that the object of the surgery had not been attained); Smith v. Clement , 01-87 (La. App. 3 Cir. 10/3/01), 797 So.2d 151, 157, writs denied, 01-2878 (La. 1/25/02), 807 So.2d 249, and 01-2982 (La. 1/25/02), 807 So.2d 843. At this preliminary stage of the proceedings, we make no findings as to whether defendants breached the duties owed to Mr. Lindquist; however, accepting the allegations as true, we find that defendants' conduct of failing to disclose the results of the x-rays and MRIs indicating a metal foreign object in Mr. Lindquist's back, is a fraudulent act which prevented him from filing his medical malpractice claim. Thus, under contra non valentem , prescription was suspended until such time as Mr. Lindquist learned of the foreign object left in his back during surgery, or May 25, 2017, at which time the one year prescriptive period began to run. Because Mr. Lindquist filed his request for a medical review panel on September 14, 2017, his suit is timely.
Additionally, defendants argue that Mr. Lindquist was not prevented from filing his malpractice suit because the diagnostic images were always available to him in his medical record, or, in other words, that he had constructive knowledge of the doctor's negligence within the statutory prescriptive periods. In addressing a similar argument made by defendants in a recent case, this Court held that, for the purposes of contra non valentem , the mere availability of information, in and of itself, cannot serve as sufficient constructive knowledge of a plaintiff's cause of action to start the running of prescription. Lennie , 251 So.3d at 646. Specifically, we stated:
In analyzing the reasonableness of a plaintiff's action or inaction, and the distinction between what the plaintiff actually knew and what the plaintiff could have known by further research, the Louisiana Supreme Court has stated, "the law of prescription references what a plaintiff knew or should have known about his potential cause of action not what he could have known." (Emphasis in original). Wells v. Zadeck , 11-1232 (La. 3/30/12), 89 So.3d 1145, 1152 (quoting Amoco Production Company v. Texaco, Inc. , 02-240 (La. App. 3 Cir. 1/29/03), 838 So.2d 821, 831-32, writ denied , 03-1104 (La. 6/6/03), 845 So.2d 1096 ). Thus, "[t]he reasonableness of the plaintiff's actions centers upon the knowledge she possessed." Id. Clearly, a plaintiff must possess some baseline knowledge relevant to his potential cause of action, from which the reasonableness of his subsequent action or inaction can be judged in light of his education, intelligence, and the nature of the defendant's conduct.
Id . at 646.
Again, accepting as true the allegations in the request for a medical review panel, Mr. Lindquist was unaware that a metal object had been left in his back during surgery until May 25, 2017. To suggest that the patient should have been aware that a metal foreign object was left in his back during surgery and therefore sought *762 out his medical records is a preposterous argument that defies common sense. Ordinary people do not know when an object has been negligently left in them during surgery.
Defendants' argument also suggests that any person looking at the x-rays and diagnostic images in the medical record, even a layperson such as Mr. Lindquist, would have seen a medical error so obvious that he would have immediately sought legal assistance and begun legal proceedings against his health care providers. If the images were indeed obvious proof of negligence, defendants' conduct in failing to disclose them to the patient is difficult to explain as anything other than intentional, fraudulent concealment.
CONCLUSION
Upon our de novo review, we find that, in light of the special relationship between the health care provider and his patient, defendants' conduct in failing to disclose a metal foreign object left in Mr. Lindquist's back during surgery prevented him from filing his claim. Applying the doctrine of contra non valentem , we find that the running of prescription was suspended until such time as Mr. Lindquist was made aware of the metal foreign object in his back. Accordingly, the judgment of the trial court sustaining defendants' exception of prescription is reversed.
REVERSED

Specifically, Mr. Lindquist's complaint states that he "underwent L4-L5 laminectomies with medical facetectcomies and foraminoties and microdiscetomy for spinal stenosis and herniated disc."

Defendants offered no evidence or testimony in support of their exception: their argument is based solely on the facts alleged in the request for a medical review panel filed by Mr. Lindquist.

As noted by the Court, this limitation can produce harsh results for injured-but-unknowing plaintiffs. For example, in Randazzo v. State, Louisiana State Univ. Health Scis. Ctr. , 03-1470 (La. App. 1 Cir. 5/14/04), 879 So.2d 741, 745, writ denied 04-1503 (La. 2/18/05), 894 So.2d 337, the medical malpractice claim of a patient who discovered that metal forceps had been left in him was found to be prescribed because he did not discover the forceps and file his suit until nearly nine years following the surgical procedure. The Court in Moses noted that "[w]hile some state legislatures have carved out an express discovery rule exception for foreign objects, the Louisiana Legislature has not." 788 So.2d at 1179.

See Moses , 788 So.2d at 1179 ; Randazzo , supra ; Romero , supra .

Even those professional liability statutes which are expressly 'peremptive' have exceptions for the running of prescription in cases of fraud. See La. R.S. 9:5604 (accountants), 9:5605 (attorneys), and 9:5606 (insurance agents).

See , e.g. , Harvey v. Davis , 432 So.2d 1203 (La. App. 4 Cir. 6/7/83) ; Gover v. Bridges , 497 So.2d 1364 (La. 1986) ; Whitnell v. Menville , 540 So.2d 304 (La. 1989) ; Rajnowski , supra at 671 ; Whitnell v. Silverman , 592 So.2d 429 (La. App. 4 Cir. 12/11/91), writ granted in part and remanded, 598 So.2d 345 (La. 1992) ; Kinnison v. Adatto , 593 So.2d 654 (La. App. 4 Cir. 1/23/91), writ denied, 595 So.2d 659 (La. 1992) ; Taylor v. Giddens , 618 So.2d 834 (La. 1993) ; Bossier v. Ramos , 29,766 (La. App. 2 Cir. 8/20/97), 698 So.2d 711, writ denied, 97-2583 (La. 12/19/97), 706 So.2d 463 ; In re Morgan, 98-1001 (La. App. 4 Cir. 12/16/98), 727 So.2d 536, writ denied 99-0364 (La. 4/23/99), 740 So.2d 643 ; Collum v. E.A. Conway Med. Ctr. , 33,528 (La. App. 2 Cir. 6/21/00), 763 So.2d 808, writ denied , 00-2210 (La. 10/13/00), 771 So.2d 653 ; Adams v. Ochsner Clinic of Baton Rouge , 99-2502 (La. App. 1 Cir. 11/3/00), 771 So.2d 258, 260, writ denied, 00-3159 (La. 1/12/01), 781 So.2d 558 ; In re Moses , supra ; Bellard v. Biddle , 02-241 (La. App. 3 Cir. 12/30/02), 834 So.2d 1238, writ denied, 03-0286 (La. 4/4/03), 840 So.2d 1217 ; Randazzo , supra ; Braud v. Cenac , 03-1696 (La. App. 3 Cir. 7/14/04), 879 So.2d 896, writ denied, 04-2101 (La. 11/15/04), 887 So.2d 484 ; Carter v. Haygood , 04-0646 (La. 1/19/05), 892 So.2d 1261 ; Kirby v. Field , 04-1898 (La. App. 1 Cir. 9/23/05), 923 So.2d 131, writ denied, 05-2467 (La. 3/24/06), 925 So.2d 1230 ; In re Jenkins , 06-0566 (La. App. 4 Cir. 11/15/06), 945 So.2d 814 ; Adams v. O'Connell , 06-0139 (La. App. 4 Cir. 3/28/07), 955 So.2d 722, 723, writ denied, 07-0824 (La. 6/1/07), 957 So.2d 182 ; In re Manus , 10-82 (La. App. 5 Cir. 5/25/10), 40 So.3d 1128, writ denied, 10-1460 (La. 10/1/10), 45 So.3d 1099 ; Wilkerson v. Dunham , 16-1056 (La. App. 4 Cir. 5/3/17), 218 So.3d 743, writ denied, 17-0932 (La. 9/29/17), 227 So.3d 287 ; Jimerson v. Majors , 51,097 (La. App. 2 Cir. 1/11/17), 211 So.3d 651 ; In re Med. Review Panel Proceedings of Glover , 17-201 (La. App. 5 Cir. 10/25/17), 229 So.3d 655 ; McCauley v. Stubbs , 17-933 (La. App. 3 Cir. 4/25/18), 245 So.3d 41.

See also , Davidson v. Glenwood Resolution Auth., Inc. , 47,640 (La. App. 2 Cir. 1/23/13), 108 So.3d 345, 349 (a foreign object medical malpractice case where the court found prescription began to run when the doctor who saw the object on an x-ray called the patient to inform him about it).

Of the 'continuous representation rule,' the Supreme Court has stated, "[t]he continuous representation rule recognizes a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which services are rendered. The continuous representation rule also protects the integrity of the attorney-client relationship and affords an attorney an opportunity to remedy an error while, at the same time, prevents the attorney from defeating the client's [malpractice] claim through pleading statute of limitations." (Internal citations omitted.) Jenkins v. Starns , 11-1170 (La. 1/24/12), 85 So.3d 612, 623.

Generally, fraud must be alleged with particularity, however, exceptions of vagueness and no cause of action are inapplicable to the medical panel review stage of the proceedings. Perritt v. Dona , 02-2601 (La. 7/2/03), 849 So.2d 56, 66.

See also, Dowling v. Mut. Life Ins. Co. of New York , 168 So.2d 107, 116 (La. App. 4 Cir. 10/13/64), writ refused , 247 La. 248, 170 So.2d 508 (1965) ("[P]ersons are liable for acts of omission...as well as for acts of commission ... but there must also be a duty imposed by the relationship of the parties which would be breached by such act of omission.").

The Supreme Court in Plaquemines Par. Comm'n Council v. Delta Dev. Co., Inc. , 502 So.2d 1034 (La. 1987) discussed extensively the third category of contra non valentem to suspend the running of prescription in the context of special relationships between the parties. There, the Court stated that mere silence in the face of a fiduciary duty like the one that exists between an attorney and his client amounts to effectual prevention. Id. at 1059.

In order to encourage such disclosures and protect doctors from possible adverse legal consequences that may arise from them, the Louisiana Legislature has enacted La. R.S. 13:3715.5, a so-called "apology law," which allows health care providers to express apology, sympathy, and regret to a patient for adverse medical outcomes while not constituting an admission of guilt or liability.