COUNSEL FOR PLAINTIFF/APPELLANT, PATRICIA LENNIE, BRETT LENNIE AND MARCELLA LENNIE FUSELIER: Timothy J. Falcon, Jeremiah A. Sprague, Jarrett S. Falcon, Marrero
COUNSEL FOR DEFENDANT/APPELLEE, CHEVRON U.S.A., INC.: Michael R. Phillips, Brett P. Fenasci, Shannon A. Shelton, Carol M. Wood, New Orleans, Lynn K. McKay
COUNSEL FOR DEFENDANT/APPELLEE, SHELL OIL COMPANY, SHELL OFFSHORE INC. AND SWEPI LP: Deborah D. Kuchler, Janika D. Polk, Michele H. DeShazo, Mark E. Best, Skylar B. Rudin, Joshua J. Doguet, New Orleans
COUNSEL FOR DEFENDANT/APPELLEE, BP PRODUCTS NORTH AMERICA, BP AMERIC PRODUCTION COMPANY AND ATLANTIC RICHFIELD COMPANY: Michael P. Cash, Wade T. Howard, Mark L. McNamara, Joseph I. Giarrusso, III, Lauren R. Bridges, New Orleans
COUNSEL FOR DEFENDANT/APPELLEE, INTRACOASTAL TUBULAR SERVICES, INC.: Thomas E. Balhoff, Judith R. Atkinson, Carlton Jones, III, Ryan R. Brown, Baton Rouge
Panel composed of Judges Susan M. Chehardy, Jude G. Gravois, and Robert A. Chaisson
CHAISSON, J.
In this survival and wrongful death suit, plaintiffs, who are the children and surviving spouse of decedent, Julius Lennie, appeal a judgment of the trial court that sustained defendants' exceptions of prescription. For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
From 1961 to 1994, Julius Lennie worked as an employee of Tuboscope, a company that was hired by various oil companies and pipe cleaning contractors to clean and refurbish used oilfield production pipe and tubing. The cleaning process used by Tuboscope involved grinding scale out of the used pipe, a process that allegedly caused the emission of naturally occurring radioactive material ("NORM"). Mr. Lennie retired from Tuboscope in 1994.
On January 28, 2010, approximately fifteen years after his retirement, Mr. Lennie was diagnosed with lung cancer. Mr. Lennie died less than a month later, on February 20, 2010. Nearly four years later, on January 2, 2014, Mr. Lennie's surviving spouse, Patricia Lennie, and his children, Brett Lennie and Marcella Lennie Fueslier, filed a survival and wrongful death suit against various oil companies and pipe cleaning contractors that had hired Tuboscope to clean and refurbish used oilfield pipe.
In their petition, the Lennies alleged that Mr. Lennie was exposed to dangerous levels of radiation from the scale and dust while working in defendants' pipe yards, and that this exposure caused Mr. Lennie's lung cancer and ultimately his death. They further alleged that during the time of Mr. Lennie's exposure, defendants were aware of the dangers of NORM, that they failed to warn Mr. Lennie of those dangers, and *641 that they failed to correctly identify, handle, contain, clean up, or dispose of NORM in their pipe yards. The Lennies additionally alleged that in August 2013, Mr. Lennie's son, Brett, discovered a newspaper article regarding lawsuits involving radiation exposure in pipe yards, and that they were not on notice of their wrongful death or survival claims until September 30, 2013, when they met with attorneys at the Falcon Law Firm regarding these lawsuits.[1] According to the Lennies, neither they nor Mr. Lennie had any knowledge of their claims because defendants actively worked to conceal the discovery of NORM and the dangers it presented to oilfield workers. The Lennies also alleged that defendants actively lobbied government environmental regulators to adopt tests and standards that were ineffective in correctly detecting NORM levels.
In response to the Lennies' petition, because it was filed more than one year after Mr. Lennie's death, various defendants filed peremptory exceptions of prescription.[2] Regarding the Lennies' survival claims in particular, defendants argued that the survival claims were extinguished due to their failure to file suit within a one-year peremptive period established by La. C.C. art. 2315.1. In opposition, the Lennies argued that because of defendants' concealment, and/or because the Lennies had no actual or constructive knowledge of their claims before Brett Lennie found the newspaper article in April 2013, that the prescriptive periods for their wrongful death and survival claims had been suspended under the doctrine of contra non valentem . Before the hearing on these exceptions, the Louisiana Supreme Court rendered its opinion in Watkins v. Exxon Mobil Corp. , 13-1545 (La. 5/7/14), 145 So.3d 237, where it determined, under facts very similar to the case sub judice , that the one-year period for survival actions set forth in Article 2315.1 is prescriptive rather than peremptive. Following this ruling, defendants refiled their exceptions of prescription and argued that the survival claims were prescribed, if not perempted.
At the hearing of defendants' exceptions, the Lennies argued that, under the theory of contra non valentem , their claims had not prescribed. The trial court, finding that the Lennies failed to meet their burden of proof for the application of contra non valentem , sustained defendants' exceptions of prescription and dismissed the Lennies' claims with prejudice. It is from this judgment that the Lennies now appeal.[3]
On appeal, the Lennies raise the following four assignments of error:
I. The trial court erred as a matter of law because it based constructive notice on what the Lennies could have known rather than what they actually did know.
*642 II. The trial court committed legal error in its analysis of constructive notice because it did not consider that the Lennies must have knowledge of facts indicating to a reasonable person that they were the victim of a tort.
III. The trial court erred in its factual finding that the Lennies possessed sufficient information to begin an investigation of their cause of action.
IV. The trial court erred in not finding defendants' concealment impeded the Lennies from acquiring knowledge of their cause of action.
DISCUSSION
Because a peremptory exception raises a legal question, appellate courts review a judgment sustaining the exception de novo . Vicari v. Window World, Inc. , 14-870 (La. App. 5 Cir. 5/28/15), 171 So.3d 425, 435. However, if evidence is introduced at the hearing on the peremptory exception of prescription, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. Rando v. Anco Insulations Inc. , 08-1163 c/w 08-1169 (La. 5/22/09), 16 So.3d 1065, 1082. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
The Lennies concede that, because their petition for wrongful death and survival claims was filed on January 2, 2014, nearly four years after Mr. Lennie's death on February 20, 2010, it appears on the face of the petition to have prescribed. Ordinarily, the party urging prescription bears the burden of proof at the trial of the exception; however, if the petition is prescribed on its face, the burden shifts to the plaintiff to show that the action has not prescribed. Palazola v. IMC Consulting Eng'rs, Inc. , 16-22 (La. App. 5 Cir. 6/30/16), 197 So.3d 782, 784.
At the trial of the exceptions of prescription and on appeal, the Lennies maintain that the prescriptive periods on their claims were suspended pursuant to the doctrine of contra non valentem . The doctrine of contra non valentem agere nulla currit praescriptio ("prescription does not run against the party unable to act") is an exception to La. C.C. art. 3467, which states that prescription runs against all persons unless an exception is established by legislation. Guillot v. Daimlerchrysler Corp. , 08-1485 (La. App. 4 Cir. 9/24/10), 50 So.3d 173, 181 (citing Wimberly v. Gatch , 93-2361 (La. 4/11/94), 635 So.2d 206, 212 ). Pursuant to the doctrine of contra non valentem , prescription does not run against a claimant who is ignorant of the existence of facts that would enable him to bring a cause of action, provided that his ignorance is not willful, negligent, or unreasonable. Id.
The doctrine of contra non valentem may apply when: 1) there is some legal cause which prevented the court or its officers from taking cognizance of and acting on the plaintiff's actions; or 2) where there is some condition coupled with the contract or coupled with the proceedings which prevented the plaintiff from suing or acting; or 3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; or 4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Tenorio v. Exxon Mobil Corp. , 14-814 (La. App. 5 Cir. 4/15/15), 170 So.3d 269, 274-75. The Lennies contend that the third and fourth categories of contra non valentem are applicable to their claims.
*643 The Lennies have brought both survival claims and wrongful death claims, which are separate and distinct causes of action. See Watkins , 145 So.3d at 241 ; Guidry v. Theriot , 377 So.2d 319, 322 (La. 1979). Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct, arise at different times, and address themselves to the recovery of damages for totally different injuries and losses. Walls , 98-0455 (La. 9/8/99), 740 So.2d 1262, 1274.
A survival action is authorized when a person, who possesses a cause of action for injuries sustained by an offense or quasi offense, subsequently dies. In these circumstances, the right to recover all damages for injury to the decedent caused by the offense or quasi offense is recognized in favor of certain statutorily-designated beneficiaries of the decedent. La. C.C. art. 2315.1. In contrast, a wrongful death action is recognized in favor of certain statutorily-designated beneficiaries of a person who dies due to the fault of another, to recover damages which they themselves have sustained as a result of the death. La. C.C. art. 2315.2 ; Walls , 740 So.2d at 1269-70. Because each right arises at a different time, we address the relevant prescriptive periods for each distinct classification of claims, and the proper application of the doctrine of contra non valentem to each of those claims, separately.
Wrongful Death Claims
The wrongful death action is subject to a one-year prescriptive period which begins to run at the death of the decedent, not from the time of the tortious conduct resulting in death.[4] La. C.C. art. 2315.2(B) ; Landry v. Avondale Indus. , 03-3432 c/w 03-3434 c/w 03-3435 (La. 7/2/04), 877 So.2d 970, 979. All three plaintiffs have filed claims for wrongful death pursuant to La. C.C. art. 2315.2, which are prescribed on their faces because they were filed on January 2, 2014, nearly four years after Mr. Lennie's death in February 2010. The burden, therefore, is on the Lennies to show that the doctrine of contra non valentem should be applied to suspend the running of prescription.
Concealment
We begin with the third category of contra non valentem , which applies when the defendant has done some act effectually to lull the victim into inaction and prevent him from availing himself of his cause of action. To trigger application of the third category, a defendant's conduct that keeps the victim in ignorance must rise to the level of concealment, misrepresentation, fraud, or ill practices. Dominion Expl. & Prod. v. Waters , 07-0386 (La. App. 4 Cir. 11/14/07), 972 So.2d 350, 358 (citing Fontenot v. ABC Ins. Co. , 95-1707 (La. 6/7/96), 674 So.2d 960, 963 ). Where the plaintiff is able to establish such conduct, prescription is suspended until the plaintiff is made aware of the truth of the matter. Id. Accordingly, we must examine the conduct of defendants to determine whether they have done some act or acts which effectually prevented the Lennies from availing themselves of their wrongful death cause of action.
The Lennies have argued under this third category of contra non valentem that defendants actively sought to conceal the causal link between work-related NORM exposure and lung cancer, and downplay the danger of exposure to the radioactive material in the workplace. In support of their contention that defendants actively *644 concealed the link between work-related NORM exposure and cancer, the Lennies presented evidence documenting the following: the oil industry's discovery of NORM in the North Sea in 1981 and in Mississippi in 1986; the formation of an industry trade group which developed a screening method for finding NORM in their oil wells; the promotion of this screening method (which the Lennies characterize as ineffective at detecting NORM); the adoption of this screening method by the State of Louisiana in its NORM regulations in 1989; and the subsequent adoption by Tuboscope of the state-approved NORM screening method in its standard operating procedures.
The Lennies argue that, through defendants' lobbying efforts and publication of academic papers, defendants engaged in an ongoing pattern of concealment that prevented the Lennies from acting on their claims. In this, their argument is similar to that put forth by the plaintiffs in Lester v. Exxon Mobil Corp. , 10-743 (La. App. 5 Cir. 5/31/12), 102 So.3d 148. In Lester , this Court upheld the decision of the trial court finding that the third category of contra non valentem applied to the delictual claims for injuries caused by NORM exposure among oilfield workers because the defendant, Exxon Mobil, showed videos to its workers which stated that it would be very unlikely for an oilfield worker to inhale or ingest a harmful amount of NORM.
The case sub judice is distinguishable. Here, the Lennies neither allege nor provide any evidence of actions taken by defendants that would rise to the level of concealment, misrepresentation, or fraud directed towards them. The last act of "concealment" by defendants alleged in the Lennies' petition is the publication of a NORM-related academic study in 2002, eight years before their wrongful death cause of action arose.
The record evidence shows that subsequent to the discovery of NORM in Mississippi in 1986, defendants participated in the formation of an industry trade group which developed a screening method to detect NORM. That screening method was adopted by the State of Louisiana in its NORM regulations in 1989. The record evidence also shows that Tuboscope adopted these state-approved screening methods in its standard operating procedures and conducted training sessions with its employees regarding NORM in the workplace. Regardless of any assertion that these screening methods may have arguably been ineffective at detecting NORM, the evidence does not establish that defendants intentionally adopted inadequate screening methods that were known in the industry to be ineffective at detecting NORM.
Furthermore, the actions of defendants in forming the industry trade group, developing screening methods for NORM, and participating in adoption of regulations by the State of Louisiana, directly contradict any suggestion that defendants were downplaying the significance of NORM in the workplace or were otherwise engaging in concealment of Mr. Lennie's or his family's causes of action from them. We find no manifest error in the trial court's factual finding that the Lennies failed to meet their evidentiary burden to show that defendants were involved in any actual conspiracy, misrepresentation and/or fraud to conceal their causes of action from them.
Actual or Constructive Knowledge
Next we turn to the application of the fourth category of contra non valentem , sometimes known as the "discovery rule," which suspends the running of prescription where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not *645 induced by the defendant. Tenorio , 170 So.3d at 275.
In rejecting the Lennies' contention that the running of prescription on their claims was suspended under the fourth category of contra non valentem , the trial court stated:
In the not too distant past, the ability to obtain the information needed to make causal connections between environmental exposures in the workplace and health risks was tedious, difficult, cumbersome and often slow. With the invention of the computer and related technology, the process for gathering and weighing information has changed significantly. Today, as well as in 2010, the ability to make a connection, if one exists, between two items is at one's fingertips and can be ascertained in a matter of minutes, if not seconds. Never in the history of mankind has information been more accessible. All of the information which could have and would have incited an inquiry of Brett Lennie to pursue further remedy, was available to him, his sister, and his mother in 2010. Consequently, this Court finds the cause of action was reasonably knowable in 2010.
Regarding this statement by the trial court, the Lennies complain that the trial court erred as a matter of law by, rather than considering the actual knowledge that the Lennies did have, finding that they could not benefit from contra non valentem because there was "... information out there that the Plaintiffs could have found ." (emphasis in original).
While it is not entirely clear to us from the trial court's statement that it was inferring that the availability of information on the internet, in and of itself , with nothing more, is sufficient constructive knowledge to put the Lennies on notice of their cause of action, to the extent that this was the standard the trial court applied to the fourth category of contra non valentem , we agree with the Lennies that this would be legal error.
The Louisiana Supreme Court has stated:
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start the running of prescription. (Citations omitted)
Campo v. Correa , 01-2707 (La. 6/21/02), 828 So.2d 502, 510-11.
In discussing the knowledge that is sufficient to start the running of prescription under the fourth category of contra non valentem , the Louisiana Supreme Court subsequently described constructive knowledge as "... the acquisition of sufficient information, which, if pursued, will lead to the true condition of things." Marin v. Exxon Mobil Corp. , 09-2368 (La. 10/19/10), 48 So.3d 234, 246. According to Marin , "the ultimate issue in determining whether a plaintiff had constructive knowledge sufficient to commence a prescriptive period is the reasonableness of the plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct. Id. ;
*646 Lapuyade v. Rawbar, Inc. , 15-705 (La. App. 5 Cir. 4/13/16), 190 So.3d 1214, 1221. Contra non valentem will not apply to exempt a plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect. Id.
In analyzing the reasonableness of a plaintiff's action or inaction, and the distinction between what the plaintiff actually knew and what the plaintiff could have known by further research, the Louisiana Supreme Court has stated, "the law of prescription references what a plaintiff knew or should have known about his potential cause of action not what he could have known." (emphasis in original). Wells v. Zadeck , 11-1232 (La. 3/30/12), 89 So.3d 1145, 1152 (quoting Amoco Production Company v. Texaco, Inc. , 02-240 (La. App. 3 Cir. 1/29/03), 838 So.2d 821, 831-32, writ denied , 03-1104 (La. 6/6/03), 845 So.2d 1096 ). Thus, "[t]he reasonableness of the plaintiff's actions centers upon the knowledge she possessed." Id. Clearly, a plaintiff must possess some baseline knowledge relevant to his potential cause of action, from which the reasonableness of his subsequent action or inaction can be judged in light of his education, intelligence, and the nature of the defendant's conduct.
Application of a standard whereby the mere availability of information on the internet, in and of itself , is sufficient constructive knowledge of his cause of action would eliminate any requirement that a plaintiff have some baseline knowledge sufficient to excite attention and call for inquiry. Consequently, we reject any contention that the mere availability of information on the internet, in and of itself , can serve as sufficient constructive knowledge of a plaintiff's cause of action. To find otherwise would effectively impute all knowledge obtainable through an internet search to every plaintiff as constructive knowledge.
Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Schouest v. Burr , 09-356 (La. App. 5 Cir. 1/12/10), 30 So.3d 1017, 1022. Because the statements of the trial court in its reasons for judgment suggest that it may have applied an incorrect legal standard, we choose to conduct a de novo review of the entire record before us to determine if the Lennies possessed sufficient constructive knowledge of their causes of action to commence the running of prescription on their claims.
Beginning with what the Lennies actually knew at the time of Mr. Lennie's death in February 2010, the time at which the running of prescription on their wrongful death claims would have begun, the following evidence was presented:
Patricia Lennie, a graduate of New Iberia High School, testified that she had been married to Mr. Lennie the entire time he worked at Tuboscope and that she knew a lot about his work there, including that he worked in the pipe yards. During that time, neither he nor anyone else mentioned NORM or radiation in the pipe yards to her. The first she learned of NORM and its potential cause of her husband's cancer was when her son Brett mentioned a news article to her in April 2013. She also testified that her husband smoked a pack and a half of cigarettes a day from age 15 to age 66. She did not undertake any type of investigation into the cause of her husband's lung cancer.
Marcella Fueslier, a graduate of John Ehret High School, testified that she knew her father worked in the pipe yards for Tuboscope, but that neither he nor anyone *647 else mentioned NORM or radiation to her. She further testified that she knew nothing about NORM as a potential cause of her father's cancer until sometime in 2013 when her brother Brett brought her the newspaper article. She did nothing to research the type of cancer her father had, and did not inquire as to the cause of his cancer.
Brett Lennie, a graduate of the University of Louisiana at Lafayette, testified that he began working in the oilfield industry for Superior Energy sometime in 2003, at which time he attended a training session that mentioned NORM and that exposure to it carried health risks, though he does not recall the training explaining how NORM exposure might occur. He further testified that he never discussed his NORM training with his mother or sister, and that he first recalls learning about the potential exposure of pipe yard workers to NORM in April 2013 from an online news article regarding NORM litigation. He also testified that he had no discussions with his father's doctors regarding what could have caused his father's cancer nor did he conduct any investigation whatsoever to determine the cause of his father's cancer.
According to this testimony, the Lennies did not have actual knowledge of facts indicating that another party wrongfully caused Mr. Lennie's death until the discovery of the news article in April 2013. In this, the plaintiffs' argument is similar to that set forth by the plaintiffs in Griffin v. Kinberger , 507 So.2d 821 (La. 1987). In that case, nineteen years after an alleged tortious incident, a mother filed an action for damages against a hospital for negligent administration of oxygen to her premature baby. The plaintiff argued that the doctrine of contra non valentem suspended the running of the prescriptive period because her cause of action was not known or reasonably knowable until 1982 when she read a newspaper article that reported the settlement of a lawsuit in Florida involving a child who had lost vision in one eye from negligent treatment with oxygen during a premature birth. The Louisiana Supreme Court agreed with this argument and found that the plaintiff's claims had not prescribed. In particular, the Court noted that the mother, an eighteen-year old with a sixth-grade education, was assured by the child's treating physicians that his injuries were a natural and expected consequence of the necessary administration of oxygen to premature children at birth. Id. at 824. In light of her education and experience, and based on the assurances of the doctors, the Court found it reasonable for her to make no further inquiry or pursue the cause of action. Id.
The facts of that case are distinguishable from those presented here, however. The Lennies have offered no evidence as to what they understood caused Mr. Lennie's lung cancer and subsequent death. There is no evidence that they reasonably relied on a doctor's explanation as to the cause of Mr. Lennie's lung cancer ; to the contrary, they testified that they did not speak with Mr. Lennie's doctors about what caused his cancer. Evidence was introduced that Mr. Lennie was a heavy smoker, but none of the Lennies stated that they believed that smoking caused the decedent's lung cancer.[5] Additionally, none of the Lennies stated that they had a conversation with Mr. Lennie himself as to what he believed caused his lung cancer.
*648 Each of them testified that they made no inquiry whatsoever into the cause of Mr. Lennie's lung cancer. While under the facts of this case it may not have been reasonable for the Lennies to contact Mr. Lennie's former co-workers following his death from lung cancer when they had no knowledge of NORM, its hazardous effects, or of Mr. Lennie's potential exposure to it at the workplace, their failure to make even a rudimentary inquiry into the causes of Mr. Lennie's illness and death appears unreasonable.
In Tenorio , supra , this Court previously addressed the issue of whether a diagnosis of a disease process of the body is sufficient constructive notice of a potential cause of action such that the plaintiff is prevented from relying upon the doctrine of contra non valentem to suspend the running of prescription. In that case, Mr. Tenorio worked from 1981 through 1988 in yards that performed operations that cleaned oil field generated radiation scale from pipes used in oil and gas production. Twenty-one years later, in 2009, Mr. Tenorio was diagnosed with squamous carcinoma of the vocal chords (throat cancer ). After learning from a former co-worker in 2013 that his cancer might be related to his work activities, Mr. Tenorio filed suit in 2014, over four years after the date of his diagnosis. Tenorio , 170 So.3d at 272.
In response to the defendants' exception of prescription, Mr. Tenorio argued that the doctrine of contra non valentem applied to his claim because he did not have knowledge of the cause of his throat cancer until his discussion with his former co-worker in 2013. In rejecting Mr. Tenorio's argument regarding his lack of knowledge regarding the cause of his cancer, this Court found that "[h]is diagnosis was constructive notice sufficient to put Mr. Tenorio on guard and to call him to inquire into the cause of his condition. Contra non valentum (sic) will not protect a plaintiff's claim from the running of prescription when his own willfulness or neglect caused his ignorance." Tenorio , 170 So.3d at 275.
Upon our de novo review in this case, we likewise conclude that Mr. Lennie's diagnosis of lung cancer in January 2010 was constructive notice sufficient to put the Lennies on guard and to call for them to inquire further into the cause of his condition. As the parties seeking the application of the exception of contra non valentem to suspend the running of prescription, the Lennies have not met their evidentiary burden to show that their lack of knowledge is attributable to anything other than their own failure to investigate.[6] Therefore, prescription began to run on the Lennies' wrongful death claims on February 20, 2010, the date of Mr. Lennie's death, and was not suspended by the operation of the doctrine of contra non valentem .
Survival Claims
The survival action is established in Louisiana Civil Code article 2315.1, which states in pertinent part:
A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, *649 caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
(1) The surviving spouse and child or children of the deceased...
...
C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.
The survival action, which is derivative of the primary tort victim's action, is linked to the inception of the tortious act, omission or neglect. The action is based upon the primary tort victim's right to recovery being transferred by operation of law to the statutorily-designated beneficiaries. Therefore, the survival action is dependent upon the primary tort victim having a viable cause of action on the date of his death. Walls , 740 So.2d at 1274 (citing Taylor v. Giddens , 696 So.2d 834, 840 (La. 1993) ). Consequently, if the cause of action of the primary tort victim has prescribed prior to his date of death, then there is no viable action to transfer to his statutorily-designated beneficiaries. Richardson v. Avondale Shipyards, Inc. , 600 So.2d 801, 803 (La. App. 5th Cir. 1992).
In cases in which the viability of the primary tort victim's cause of action on the date of his death is contested, and his statutorily-designated beneficiaries invoke the doctrine of contra non valentem , the knowledge of the primary tort victim regarding his cause of action from the date of the tortious act, omission or neglect until the date of his death is a pertinent inquiry.[7] In the case sub judice , apparently because Mr. Lennie learned of his lung cancer diagnosis in January 2010 and died less than a month later on February 20, 2010, defendants have not argued that Mr. Lennie had no viable claim on the date of his death. Therefore, for purposes of our analysis, we do not concern ourselves with Mr. Lennie's knowledge of his potential cause of action.[8]
Defendants do, however, argue that plaintiffs themselves had sufficient knowledge regarding their potential survival claims such that they are not able to rely upon the doctrine of contra non valentem to suspend the running of prescription after the date of Mr. Lennie's death.[9] In order for the Lennies to successfully invoke the third and fourth categories of contra non valentem as to their survival claims, they would have to prove either *650 that there were acts of concealment, misrepresentation, or fraud by the defendants that prevented them from availing themselves of their respective causes of action, or that their causes of action were not known or reasonably knowable by them.
Because the Lennies' wrongful death and survival actions both arise from a common tort, the defendants' alleged conduct regarding concealment of that tort and the Lennies' knowledge of that tort are the same regarding both causes of action. Consequently, our previous determination that the trial court was not manifestly erroneous in its finding that defendants' actions did not amount to fraud, misrepresentation, or concealment that prevented the Lennies from availing themselves of their wrongful death cause of action, also applies to the Lennies' survival cause of action. Likewise, our determination that, upon de novo review of the record, the Lennies' ignorance of their wrongful death cause of action may be attributed to an unreasonable failure to make any inquiry whatsoever into the cause of Mr. Lennie's lung cancer, also applies to the Lennies' survival cause of action.[10]
As its findings relate to the Lennies' survival claims, we find no manifest error in the trial court's factual findings that the Lennies failed to meet their evidentiary burden to show that defendants were involved in any actual conspiracy, misrepresentation and/or fraud to conceal the Lennies' cause of action from them. Upon our de novo review of the application of the fourth category of contra non valentem to the Lennies' survival cause of action, we find that the Lennies failed to show that they did not have constructive knowledge of their survival cause of action at the time of Mr. Lennie's death.
CONCLUSION
We conclude that the Lennies failed to prove that they are entitled to rely upon the doctrine of contra non valentem to suspend the running of prescription on their facially-prescribed wrongful death and survival claims. Accordingly, the judgment of the trial court sustaining defendants' peremptory exceptions of prescription and dismissing the Lennies' claims with prejudice is affirmed.
AFFIRMED

Although the Lennies' petition stated that Brett Lennie discovered the newspaper article in August 2013, Brett Lennie testified that he read the article in April 2013.

The judgment that is the subject of this appeal pertains to exceptions of prescription filed by OFS, Inc., Shell Oil Company, Shell Offshore Inc., SWEPI LP, ConocoPhillips Company, Chevron U.S.A., Inc., BP Products North America, Inc., BP America Production Company, Atlantic Richfield Company, Marathon Oil Company, Devon Energy Production Company, L.P., and Intracoastal Tubular Services, Inc.

Subsequent to the trial court sustaining the exceptions of prescription, ConocoPhillips, Marathon Oil Company, and Devon Energy Production Company were dismissed from this litigation on joint motions of the Lennies and those defendants. Their exceptions are therefore not before this Court on appeal. Additionally, defendant OFS, Inc. has not filed a brief with this Court or otherwise participated in this appeal.

The plaintiff's injury in a wrongful death action occurs when the victim dies; thus, a wrongful death action cannot arise until the date of the victim's death. Walls , 740 So.2d at 1270.

Even had the Lennies rested on the assumption that Mr. Lennie's lung cancer was caused by smoking, at least one other court has held that simply resting on that assumption without making any inquiry into a decedent's cause of death is insufficient for the application of contra non valentem . Henderson v. Todd Shipyards , 462 So.2d 242 (La. App. 4th Cir. 1984).

The Lennies additionally argue that, even if they had asked Mr. Lennie's doctors about the cause of his lung cancer, it would not have mattered, because Dr. Kennedy, Mr. Lennie's treating oncologist, testified by deposition that he was unaware of the link between NORM exposure and lung cancer at the time he diagnosed Mr. Lennie. Nevertheless, Dr. Kennedy did not testify as to any conversations he had with Mr. Lennie's family regarding the cause of the lung cancer. This ex post facto argument is made in apparent recognition that reasonable persons in the Lennies' positions would have made some inquiry into the cause of Mr. Lennie's illness.

See generally , Richardson , supra , a survival action brought by the children of a shipyard worker who died of work-related silicosis, where this Court examined the knowledge the decedent had with regard to his illness to determine whether he still had a viable claim on the date of his death to transfer to his survivors.

Because we find that the Lennies themselves had sufficient knowledge regarding their potential survival claims such that they may not rely upon the doctrine of contra non valentem , we do not address the issue of whether a survival action plaintiff's lack of knowledge can serve to suspend the running of prescription beyond the one-year post-death prescriptive period provided in La. C.C. art. 2315.1, where the primary tort victim himself had sufficient knowledge of his claim such that prescription was running prior to his death, but had not yet tolled on the date of his death.

Prior to the Louisiana Supreme Court's opinion in Watkins , supra , there was disagreement among our Courts as to whether the one-year period set forth in La. C.C. art. 2315.1 was prescriptive (and therefore susceptible to interruption or suspension) or peremptive. In Watkins , the Supreme Court determined, under a plain language analysis of the statute, that the one-year period is prescriptive rather than preemptive, and thus subject to interruption or suspension.

Because the Lennies have not shown that they were unable to bring their survival claims within one year of Mr. Lennie's death, either due to concealment from them by defendants, or due to their lack of knowledge not caused by their own fault, it is not necessary for us to engage in a factual examination of what Mr. Lennie himself knew or didn't know regarding his cause of action or whether defendants' actions served to conceal the cause of action from him.