CHAISSON, J.
In this medical malpractice action, Ochsner Clinic Foundation ("Ochsner") seeks this Court's supervisory review of a judgment of the trial court that overruled its exceptions of prescription and no cause of action. Ochsner requests that we reverse the judgment of the trial court, sustain both of its exceptions, and dismiss this case as to Ochsner. We grant Ochsner's writ application to address the issues raised; however, for the following reasons, we deny the relief requested by Ochsner.
FACTS AND PROCEDURAL HISTORY
On December 19, 2012, Claire Betty Gibson ("Mrs. Gibson"), individually and on behalf of her deceased husband, Thomas J. Gibson, Sr. ("Mr. Gibson"), filed a request with the Commissioner of Administration, pursuant to the provisions of La. R.S. 40:1231.1, et seq. ("the Louisiana Medical Malpractice Act" or "LMMA"), for the formation of a medical panel to review allegations of malpractice against Ochsner Medical Center and Ochsner Extended Care *485 Hospital[1] regarding their care and treatment of Mr. Gibson.[2] The request specified the dates on which Mr. Gibson allegedly received negligent medical treatment from Ochsner as May 6, 2011, through May 29, 2011.[3] Mrs. Gibson's request clearly indicated that she was making a survival claim "... for her husband's pain and suffering prior to his death," as well as her own wrongful death claim.
On January 30, 2013, Mrs. Gibson amended her request for review to provide more details regarding the alleged negligent medical treatment of Mr. Gibson.[4] Specifically, Mrs. Gibson alleged that during his treatment at Ochsner Medical Center from May 6, 2011, through May 12, 2011, Mr. Gibson was over-medicated and under-nourished. Additionally, Mrs. Gibson alleged that during his treatment at Ochsner Extended Care Hospital from May 12, 2011, through May 29, 2011, Ochsner employees inflicted a wound upon Mr. Gibson, failed to properly treat the wound, and prematurely removed a tracheotomy tube. Although Mrs. Gibson further alleged that Mr. Gibson was immediately placed in the intensive care unit of Ochsner Medical Center from May 29, 2011, until his death on December 19, 2011, she did not allege that he received any negligent medical treatment during this time period. This amended request, like her initial request, was filed only by Mrs. Gibson, individually and on behalf of her deceased husband, Mr. Gibson.
Although no document submitted with Ochsner's writ application established the date of Mrs. Gibson's death, it appears the parties do not dispute that she died on December 6, 2013. Further, it appears the parties also do not dispute that, subsequent to the death of Mrs. Gibson, no one formally substituted himself as a claimant before the Division of Administration to pursue the claims that Mrs. Gibson had brought. Regardless, the matter clearly proceeded before the Division of Administration, because, over four years later, on July 19, 2018, the medical review panel issued its opinion finding that none of the named defendants were negligent in their treatment of Mr. Gibson or had breached the applicable standards of care.
According to a petition for damages subsequently filed by Thomas Gibson, Jr. ("Thomas") and Barbara Gibson ("Barbara"), the children of Mr. and Mrs. Gibson, they received notice of the medical review panel opinion by certified mail on August 30, 2018. On November 28, 2018, within ninety days of their receipt of the opinion, Thomas and Barbara filed a pro se petition for damages against Ochsner in which they made a survival claim[5] and *486 individual wrongful death claims for the death of their father. They brought this petition on their own behalf, individually, "... and on behalf of their deceased father, Thomas Gibson, Jr. (sic)," but not purportedly on behalf of their deceased mother.[6]
On January 25, 2019, in response to Thomas and Barbara's petition for damages, Ochsner filed peremptory exceptions of prescription and no cause of action. After a hearing on these exceptions, at which no testimony was taken and no exhibits were introduced,[7] the trial court rendered judgment overruling both of Ochsner's exceptions, memorialized in a judgment dated May 14, 2019.[8] It is from this judgment that Ochsner now seeks this Court's supervisory review.
In its application for supervisory writs, Ochsner maintains that the trial court erred in overruling its exceptions in three respects: 1) the filing of Mrs. Gibson's request with the Division of Administration only suspended prescription as to her individual claims against Ochsner, not the claims of any other un-named potential plaintiffs; 2) as to survival "claims" of all potential plaintiffs, those "claims" were already prescribed when Mrs. Gibson filed her initial request with the Division of Administration; and 3) Thomas and Barbara's petition for damages does not state a cause of action for wrongful death because it does not state a link between Ochsner's alleged tortious conduct and Mr. Gibson's death.
DISCUSSION
We begin our analysis by observing that the LMMA is "special legislation in derogation of the rights of tort victims, and as such, the coverage of the act should be strictly construed." Billeaudeau v. Opelousas General Hospital Authority , 16-0846 (La. 10/19/16), 218 So.3d 513, 520.
Suspension of Prescription pursuant to the LMMA
Ochsner maintains that pursuant to the LMMA, the filing of a request for a medical review panel only suspends prescription for the filing of a lawsuit in favor of the named claimant in the request, not in favor of un-named potential plaintiffs. Although this Court has not addressed this issue previously, the First, Third and Fourth Circuits have. Ochsner urges this Court to adopt the rationale and holding of the First Circuit in Parks v. Louisiana Guest House, Inc. , 13-2121 and 13-2122 (La. App. 1 Cir. 9/30/14), 155 So.3d 609, *487 writ denied , 14-2281 (La. 1/16/15), 157 So.3d 1131, that the filing of a request for review only serves to suspend the running of prescription as to the claim of the named claimant and does not serve to suspend the running of prescription in favor of un-named potential plaintiffs. Ochsner further urges this Court to reject the opposite conclusion of the Fourth Circuit in Truxillo v. Thomas , 16-0168 (La. App. 4 Cir. 8/31/16), 200 So.3d 972, as "based on erroneous reasoning" and "inconsistent with other Louisiana law regarding prescription in medical malpractice cases."[9]
In Parks , Mr. Parks, the injured patient, on his own behalf, timely and contemporaneously filed both a petition for damages alleging medical malpractice and a separate request for review of his malpractice complaint with the Division of Administration.[10] Mr. Parks died during the pendency of the medical review panel proceeding. The recitation in the opinion of the arguments of defendants indicates that no one substituted for Mr. Parks during the pendency of the medical review panel proceeding, either in the medical review panel proceeding or in the lawsuit.
After the medical review panel issued its opinion, Mr. Parks' widow and children, within the applicable time periods provided by the LMMA, filed a new lawsuit (separate from the previous lawsuit filed by Mr. Parks himself), making not only a survival claim for the injuries suffered by Mr. Parks prior to his death (which was the same claim for damages made by Mr. Parks on his own behalf in both his lawsuit and his request for review), but also wrongful death claims on their own behalf due to the death of Mr. Parks allegedly as a result of the malpractice.
In response, the defendants filed an exception of prescription in the Parks' new lawsuit, arguing that upon Mr. Parks' death, his widow and children were required to file their own request for review of their individual claims within the applicable prescriptive period in order to receive the benefit of suspension of prescription pursuant to the LMMA as to their claims. Additionally, the defendants filed exceptions of no cause of action and no right of action in Mr. Parks' initial lawsuit, arguing that because no one had substituted himself as a party plaintiff for Mr. Parks upon his death, the action could not be maintained.
After a hearing, the trial court sustained the exception of prescription and dismissed all of the Parks' claims, both survival and wrongful death, in the new lawsuit. The trial court also sustained the exception of no right of action in Mr. Parks' initial lawsuit, but granted fifteen days for the defect to be cured (ostensibly by the substitution of Mr. Parks' children as party plaintiffs in his stead).[11] The Parks appealed *488 the judgment sustaining the exception of prescription.
On appeal, the First Circuit affirmed the decision of the trial court, finding that the filing of a request for review only served to suspend the running of prescription as to the claim of the named claimant and did not serve to suspend the running of prescription in favor of un-named potential plaintiffs.[12] In reaching this conclusion, the Court looked to the language of the LMMA itself.[13] In particular, the Court noted that "... a request for review of a malpractice claim 'shall suspend the time within which suit must be instituted ... until ninety days following notification, by certified mail, ... to the claimant or his attorney of the issuance of the opinion by the medical review panel.' " Parks , 155 So.3d at 613 (emphasis in original). The Court found that "[t]his language clearly indicates that only the person or persons who actually presented a 'claim' for review are entitled to the suspension of prescription granted under La. R.S. 40:1299.47(A)(2)(a)."[14] Id. We respectfully disagree.
The statutory language quoted by the Court in Parks merely provides the mechanism by which the tolling of prescription begins again, i.e. , by notification to the claimant. Since the named claimant is the only identified claimant to whom notification can potentially be sent, this method for re-commencing the tolling of prescription is perfectly rational; however, in our view, it simply has no bearing on who receives the benefit of the suspension of prescription by the filing of the request.
The Court in Parks also relied upon the provision of the LMMA providing that "[t]he filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review." La. R.S. 40:1231.8(A)(2)(a). The Court concluded that because the legislature did not provide for a similar application of the statute to benefit all other un-named potential plaintiffs, allowing un-named potential plaintiffs to receive the benefit of suspension would amount to an expansion of the application of the statute. Parks , 155 So.3d at 613. Again, we respectfully disagree with this reasoning.
If the legislature intended the suspension of prescription to only benefit the named claimant in the request for review, it could have clearly and unequivocally stated so. The LMMA has no provision that specifically states in whose favor suspension of prescription is allowed. Rather, the statute provides that "[t]he filing of the request for a review of a claim shall suspend the time within which suit must be *489 instituted," without any indication that the suit must be instituted by the claimant who brings the request for review or that is named in the request. La. R.S. 40:1231.8(A)(2)(a) (emphasis added).
We note that, although the LMMA defines "claimant," it does not define "claim." See La. R.S. 40:1231.1(A). If the LMMA had defined "claim" as a specific individual's legal cause of action, then it would leave no doubt that each individual claimant must submit his claim to a review panel to receive the benefit of suspension of prescription. However, without such a definition, "review of a claim" may, in the vernacular, simply refer to review of an allegation that the defendant committed malpractice against a particular patient that resulted in a particular harm to that patient.
Furthermore, the LMMA's definition of "claimant" includes the sentence "[a]ll persons claiming to have sustained damages as a result of injuries to or death of any one patient are considered a single claimant." La. R.S. 40:1231.1(A)(1)(4). While the purpose of this language is not entirely clear, in our view, it would seem to suggest that a request for review of a claim of malpractice can be brought by one claimant on behalf of multiple potential plaintiffs. See Truxillo , 200 So.3d at 975 ; see also Guffey , --- So.3d at ---- (Chief Justice Johnson dissenting). And while the LMMA now requires that a request for review shall contain "[t]he names of the claimants," it does not require that it contain the names of all claimants. See La. R.S. 40:1231.8(A)(1)(b)(iii) (emphasis added). As written, the provision appears to refer to the names of the claimants who are bringing the request, with no indication that all potential plaintiffs are required to join in that request.
The legislature, in enacting the LMMA, recognized "the need to fully protect plaintiffs who would otherwise suffer the detrimental effect of liberative prescription during the panel review process that is required before an action can be filed." Borel v. Young , 07-0419 (La. 11/27/07), 989 So.2d 42, 63, on reh'g (July 1, 2008) (emphasis added). "Mindful of the admonition that the provisions of the Medical Malpractice Act must be strictly construed because they grant immunities or advantages to special classes in derogation of the general rights available to tort victims, and that prescriptive statutes must be strictly construed against prescription and in favor of the obligation sought to be extinguished," Id. at 64 (citations omitted), we will not read into the statute language that is simply not contained therein. Rather than an expansion of the application of the statute as found by the First Circuit in Parks , we view this as a restriction on the application of the statute to only the clear and unequivocal language found therein. We therefore decline Ochsner's invitation to adopt the First Circuit's reasoning and holding in Parks . Rather, we agree with the Fourth Circuit's reasoning in Truxillo .
As stated by the Fourth Circuit:
The review panel process, therefore, is 'designed to weed out spurious medical malpractice claims.' The requirement that all claims be submitted to a medical review panel prior to the filing of a lawsuit is clearly designed to evaluate the facts allegedly giving rise to the malpractice claims from the perspective of the health care providers. Indeed, the medical review panel's 'sole duty [is] to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care.' '[N]o findings are made by the panel as to damages, and the findings of the medical review *490 panel are not binding on the litigants.' (citations omitted) (emphasis in original).
Truxillo , 200 So.3d at 975-76.
Since the medical review panel's task is to evaluate the evidence and express an opinion as to whether or not it supports the conclusion that the defendant acted or failed to act within the appropriate standard of care, there is no focus whatsoever on the claimants during the medical review panel process. Id. Whether the request for review is brought by one proper claimant or by all of the potential claimants will have no effect whatsoever on the medical review panel process. "Although persons who are allowed to eventually file a claim in a court is limited by law, it makes no difference when the judicial process begins who initiated the panel proceedings, or who or when others joined or not." Guffey , --- So.3d at ---- (Chief Justice Johnson, in addition to dissenting from the majority's finding that the named claimant was not a proper claimant, expressing her opinion as to the secondary issue regarding suspension of prescription that the majority declined to address).
Ochsner argues that the Fourth Circuit's decision in Truxillo is contrary to the Louisiana Supreme Court's decision in Warren v. Louisiana Medical Mut. Ins. Co. , 07-0492 (La. 12/2/08), 21 So.3d 186, on reh'g (June 26, 2009), which held that any general codal article which conflicts with the operation of prescription under the LMMA cannot be applied in a medical malpractice case, and therefore disallowed the plaintiff's untimely suit to "relate back," pursuant to La. C.C.P. art. 1153, to the timely filing of suit by her mother and sister. We disagree.
Ochsner correctly observes that the Warren Court found that "the claim of a plaintiff who did not bring a timely panel complaint had prescribed." However, Ochsner appears to suggest that it was the failure to timely bring, or join in, a timely panel complaint that was fatal to the plaintiff's later lawsuit. This simply was not the holding in Warren . Warren imposes no duty upon a plaintiff to join in a timely filed panel complaint as a prerequisite to filing a subsequent lawsuit. Warren addresses the issue of "relation back," pursuant to La. C.C.P. art. 1153, of a plaintiff's untimely suit to the timely filing of a suit by another plaintiff. This is not the issue before this Court, or the Courts in Parks or Truxillo . Nor is recognition of the suspensive provisions of the LMMA in the appropriate case "relation back by another name," as suggested by Ochsner.
The LMMA provides for the suspension of prescription during the pendency of the medical review panel process, which as stated in the LMMA runs from the filing of the request for review " ... until ninety days following notification ... of the issuance of the opinion of the medical review panel." La. R.S. 40:1231.8(A)(2)(a). In Warren , the plaintiff attempted to join the timely filed medical malpractice suit of her mother and sister almost two years after receipt of the medical review panel opinion by counsel for her mother and sister, outside the time period of pendency of the medical review panel proceeding. Therefore, in order for the plaintiff to join the timely filed suit outside of the time period of pendency of the medical review panel proceeding, her amendment would have to "relate back" to the timely filed suit. The Louisiana Supreme Court, finding that "relation back" pursuant to general civil procedure codal article 1153 does not apply in medical malpractice cases, never reached the issue of whether a plaintiff who does not participate in a timely filed medical review panel request is nonetheless entitled to the benefit of suspension of prescription pursuant to the LMMA.
*491 In the case before us, as well as in Parks , Truxillo , and Guffey , the plaintiffs facing exceptions of prescription all filed their suits within the ninety-day time period following notification of the issuance of the opinion of the medical review panel. Therefore, the issue in all of these cases is the plaintiffs' entitlement to the benefit of suspension of prescription pursuant to the LMMA, not "relation back" pursuant to general codal articles. The holding in Warren is not pertinent to our analysis.
Although we disagree with the Court's conclusion in Parks that the filing of a request for review only serves to suspend the running of prescription as to the claim of the named claimant, because of an important factual distinction between that case and the matter before us, we agree with the result that the First Circuit reached in Parks . In Parks , the only claim submitted to a medical review panel, by Mr. Parks on his own behalf, was a claim alleging that the defendants' negligent conduct caused him personal injuries. This claim was the same claim that, after Mr. Park's death, would become the plaintiffs' survival claim. Unlike in the case before us, no one in Parks submitted a claim for wrongful death to a medical review panel (i.e. , a claim alleging that the defendants' negligent conduct caused , or contributed to, Mr. Park's death ).
La. R.S. 40:1231.8(G) provides:
The panel shall have the sole duty to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care. After reviewing all evidence ... the panel shall ... render one or more of the following expert opinions ... :
(1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.
...
(4) When paragraph (1) of this Subsection is answered in the affirmative, that the conduct complained of was or was not a factor of the resultant damages ....
(emphasis added)
This provision makes clear that the question of whether the negligent conduct was a factor in causing the resultant damages is within the purview of the medical review panel.[15] In a survival claim, the "resultant damages" are "all damages for injury to [the decedent], his property or otherwise," which are the identical damages that the tort victim had the right to claim during his lifetime. La. C.C. 2315.1(A). Unlike a survival claim, in a wrongful death claim, the "resultant damage" is the death of the tort victim. La. C.C. art. 2315.2.
In Parks , because the request for review was filed by Mr. Parks, necessarily before his death, the question of whether the defendants' negligent conduct caused Mr. Parks' death was clearly never put before a medical review panel. To find that Mr. Parks' request for review suspended the running of prescription as to future wrongful death claims for his own death, would be to deprive the defendants of the full protections of the LMMA that require all claims of medical malpractice first be submitted *492 to a review panel, because no review panel ever considered whether the defendants' alleged negligent conduct caused the "resultant damage" of the death of Mr. Parks. In our opinion, when analyzing suspension of prescription pursuant to the LMMA, the focus is not on the claimants and their individual "claims" (i.e. , legal causes of action) having to be brought by each claimant; rather, in order to determine whether prescription has been suspended as to a particular claim, the focus is on the nature of the timely-brought allegation of malpractice as being a survival claim and/or a wrongful death claim.
We observe that the real question regarding the wrongful death claims in Parks was not whether the plaintiffs could receive the benefit of suspension of prescription arising from the filing of a request for review by a claimant other than themselves. The question was whether any request for review of a wrongful death claim had been submitted by anyone to a medical review panel, such that there was suspension of prescription in favor of anyone as to those claims. With no request for review of a wrongful death claim having been submitted by anyone in Parks , in our opinion, the plaintiffs' lawsuit, filed over a year after the death of Mr. Parks, was not timely, and the exception of prescription as to those claims was properly sustained.
Unlike in Parks , in the case before us, Mrs. Gibson did timely submit a request for review of a wrongful death claim regarding the death of Mr. Gibson. Therefore, the allegation that Ochsner's conduct was negligent, and that their negligent conduct caused, or contributed to, Mr. Gibson's death, was squarely before, and considered by, the medical review panel.
We therefore conclude that the filing of a timely request for review of a claim of medical malpractice by a tort victim, or by any statutorily designated survivor for a survival claim should he be deceased, suspends the running of prescription not only as to the named claimant, but also as to all potential plaintiffs designated by La. C.C. art. 1215.1 for a survival claim. We further conclude that the filing of a timely request for review of a claim of medical malpractice resulting in wrongful death, by any statutorily designated survivor for a wrongful death claim, suspends the running of prescription not only as to the named claimant, but also as to all potential plaintiffs designated by La. C.C. art. 1215.2 for a wrongful death claim.
Survival Claims
Ochsner next contends that even if the filing of a request for review by one claimant suspends the running of prescription as to un-named potential plaintiffs, Thomas and Barbara's survival "claims" are nonetheless prescribed because Mrs. Gibson's initial request for review was not filed within one year of the alleged tortious conduct. Specifically, Thomas and Barbara's petition for damages alleges that Ochsner's negligent conduct occurred between May 31, 2011, and December 19, 2011, the date of Mr. Gibson's death. Ochsner argues that the specific conduct alleged by plaintiffs "indicates that all of these actions occurred before December 19, 2011," and therefore Mrs. Gibson's panel request on December 19, 2012, as to a survival claim, was untimely. We conclude that even assuming that the last alleged negligent conduct by Ochsner occurred on October 16, 2011, the date of the alleged second injury to Mr. Gibson, the request for review of the survival claim was still timely filed by Mrs. Gibson.
La. C.C. art. 2315.1(A) provides:
If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, *493 caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased ...
Therefore, as long as Mr. Gibson's malpractice claim was viable on the date of his death, a member of the designated class of beneficiaries in La. C.C. art. 2315.1(A) had one year from the date of his death to file a request for review of the survival claim. Mr. Gibson had one year from the date of alleged malpractice to file his malpractice claim. La. R.S. 9:5628. Therefore, even the earliest alleged act of malpractice by Ochsner, on May 31, 2011, had not prescribed at the time of Mr. Gibson's death on December 19, 2011. Mr. Gibson's malpractice claim for his own injuries was viable on the date of his death. Mrs. Gibson had an additional year from the date of Mr. Gibson's death to file her request for review. Mrs. Gibson filed her request on December 19, 2012, which was timely.
Pursuant to La. R.S. 40:1231.8(A)(2)(a), the filing of that timely request for review suspended prescription during the pendency of the medical review panel proceeding until ninety days following notification to the claimant of the opinion of the medical review panel. According to plaintiffs' petition, that notification occurred by certified mail on August 30, 2018; therefore, Mrs. Gibson had until November 28, 2018, to file suit. Because Mrs. Gibson had already died, her children instead brought that suit on November 28, 2018, within the applicable time period. Having already found that Mrs. Gibson's request for review suspended the running of prescription in favor of Thomas and Barbara, we conclude that their petition for damages for a survival claim was timely filed on November 28, 2018.
Finally, we must note that even if Mrs. Gibson's filing of the request for review did not suspend the running of prescription in favor of Thomas and Barbara, we still find that their petition, as to a survival claim only, was a timely substitution of Thomas and Barbara as party plaintiffs for Mrs. Gibson as to that claim.
Both the survival action and the wrongful death action are heritable. See La. C.C. art. 2315.1(C) and La. C.C. art. 2315.2(C), respectively. Furthermore, "[w]hen a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself substituted for the deceased party ..." La. C.C.P. art. 801. Mrs. Gibson made a timely request for review of a survival claim and wrongful death claim, and therefore "the time within which suit must be instituted" to bring those claims was suspended "until ninety days following notification ... of the issuance of the opinion by the medical review panel." La. R.S. 40:1231.8(A)(2)(a). The question therefore is whether Thomas and Barbara have timely and adequately "substituted" themselves for Mrs. Gibson as to those claims.
Ochsner appears to make two arguments regarding substitution: (1) that any substitution was untimely because it did not occur during the panel proceedings; and (2) that Thomas and Barbara did not bring their lawsuit "on behalf of Mrs. Gibson." As to timeliness, we find no provision within the LMMA, or within the general law, that requires that the substitution take place during the panel proceedings.[16] In this particular case, because Mrs. Gibson died before the time allowed to her by the LMMA to file suit, the only time constraint *494 on Thomas and Barbara to substitute themselves was that they do so before the claims brought by Mrs. Gibson prescribed. Because Thomas and Barbara brought their petition within ninety days of receipt of the medical review panel opinion, there is no issue of untimeliness regarding their substitution.
We find Ochsner's second contention regarding substitution to be an argument as to form, the question being whether Thomas and Barbara's lawsuit was sufficient to serve as a "substitution." We note that the codal articles on substitution have no requirements as to exact language that must be used or as to the form that it must take. See La. C.C.P. arts. 801 et seq. What is required is that the substituting party express his intent to assume prosecution of the pending claim; the opportunity for substitution is not the opportunity to add new claims to the litigation. We therefore examine the lawsuit brought by Thomas and Barbara to determine whether it suffices as a substitution of themselves to continue the prosecution of the claims brought by their mother in her panel request. Because of the differences between a survival claim and a wrongful death claim, we determine that their petition suffices as a valid substitution for the survival claim but does not suffice as a valid substitution for the wrongful death claim.[17]
A survival claim, as a derivative claim, is a single claim that potentially may be shared among multiple individuals, and has as its object the recovery of "all damages for injury to [the decedent], his property or otherwise, caused by the offense or quasi offense ..." La. C.C. art. 2315.1(A). In their petition, Thomas and Barbara state that they are bringing their claims, not only on their own behalf, but on behalf of their deceased father, as a result of the alleged medical malpractice of Ochsner. Moreover, they specifically refer to their father's injuries and damages for which they, as his statutory beneficiaries, are entitled to recover under La. C.C. art. 2315.1. This is the identical survival claim that Mrs. Gibson was pursuing when she brought her request for a medical review panel. We find that Thomas and Barbara, in their petition, have adequately expressed their intention to assume prosecution of the survival claim.
Unlike a survival claim, a wrongful death claim is not a derivative claim in which the claimant seeks the same damages to which the decedent was potentially entitled on his own behalf. A wrongful death claim is an individual claim of each statutorily designated beneficiary in which he seeks recovery for his own damages suffered due to the death of the decedent. This claim does not arise until the death of the decedent. See La. C.C. art. 2315.2. Lennie V. Exxon Mobil Corp. , 17-204 (La. App. 5 Cir. 6/27/18), 251 So.3d 637, 643, writ denied , 18-1435 (La. 11/20/18), 256 So.3d 994. Therefore, the only wrongful death claim that Mrs. Gibson could bring in her request for review was her own individual wrongful death claim. Although Thomas and Barbara clearly express their intention to pursue their own individual wrongful death claims, their petition does not even mention Mrs. Gibson or her wrongful death claim. Upon review of the particular allegations of Thomas and Barbara's petition, we conclude that their petition does not suffice as an adequate substitution *495 to Mrs. Gibson's wrongful death claim.
No Cause of Action
Ochsner next contends that Thomas and Barbara's petition for damages does not state a cause of action for wrongful death because it does not state a link between Ochsner's alleged tortious conduct and Mr. Gibson's death.
The exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Khoobehi Props., LLC v. Baronne Dev. No. 2, L.L.C. , 16-506 (La. App. 5 Cir. 3/29/17), 216 So.3d 287, 297. The appellate court reviews a trial court's ruling sustaining an exception of no cause of action de novo because the exception raises a question of law and the court's decision is based solely on the sufficiency of the petition. Id. The peremptory exception of no cause of action is triable on the face of the pleadings, and, for purposes of resolving issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Id. Because Louisiana uses a system of fact pleading, a plaintiff is not required to plead a theory of recovery in his petition; however, mere conclusions of the plaintiff unsupported by facts will not set forth a cause of action. Id.
La. C.C. art. 2315.2 clearly provides a cause of action for wrongful death, and children of the decedent are clearly within the first class of designated beneficiaries who are authorized to bring this cause of action. Therefore, the crux of Ochsner's argument regarding its exception of no cause of action, is not that Thomas and Barbara have no wrongful death cause of action for the death of their father, but rather that they have failed to sufficiently plead that cause of action in their petition because they do not link Ochsner's alleged tortious conduct and Mr. Gibson's death (i.e. , they do not sufficiently allege that the tortious conduct caused, or contributed to, Mr. Gibson's death).
"Louisiana is a fact pleading state that values substance over form and does not require the use of magic titles or terminology as a threshold requirement for validly pleading an action." Reynolds v. Brown , 11-525 (La. App. 5 Cir. 12/28/11), 84 So.3d 655, 658. No technical forms of pleadings are required. La. C.C.P. art. 854. "The aim of pleading is to show that the court is vested with subject matter jurisdiction in the case, to set forth the bounds to a controversy, and to allow the parties to explore the issues within the bounds of the controversy." B.A. Kelly Land Co., L.L.C. v. Questar Exploration and Production Co. , 47,509 (La. App. 2 Cir. 11/14/12), 106 So.3d 181, 188. "Pleadings must be construed reasonably so as to afford litigants their day in court. When it can reasonably do so, the trial court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence." CamSoft Data Systems, Inc. v. Southern Electronics Supply, Inc. , 15-1260 (La. App. 1 Cir. 9/23/15), 182 So.3d 1009, 1016. Every pleading shall be so construed as to do substantial justice. La. C.C.P. art. 865.
In their petition, Thomas and Barbara alleged that they were seeking "damages under Louisiana Civil Code articles 2315.1 [and] 2315.2 and the Louisiana Medical Malpractice Act for the survival and wrongful death damages suffered by their father." They further alleged that Mr. Gibson "suffered injuries, pain and damages, that were caused, contributed to, and/or precipitated by the negligence ... [of] ... Ochsner." Finally, in their specification of damages, they alleged that "[p]rior to his death, Thomas Gibson, suffered the following non-exclusive injuries and damages, as *496 a direct and/or proximate result of Defendants' negligence, for which his surviving statutory beneficiaries ... are entitled to recover under Louisiana Civil Code article ... 2315.2: G. Wrongful Death."
Reasonably construing these allegations so as to do substantial justice, we find that Ochsner was put on notice that the nature of the claims being made by Thomas and Barbara included a claim for wrongful death of their father, which they alleged was caused, or contributed to, by the negligence of Ochsner.[18] We conclude that Thomas and Barbara have a cause of action for wrongful death, which they have sufficiently plead, and that the trial court was correct to overrule Ochsner's exception of no cause of action.
CONCLUSION
We find no error in the trial court's judgment that overruled Ochsner's exceptions of prescription and no cause of action. Accordingly, we deny the relief requested by Ochsner and remand this matter to the trial court for further proceedings consistent with this opinion.
WRIT GRANTED; RELIEF DENIED; REMANDED

These entities are apparently subsidiaries of relator, Ochsner Foundation Hospital.

The request also made allegations against East Jefferson General Hospital and St. Theresa Specialty Hospital; however, those entities are not involved in this writ application and the allegations against them are not pertinent to our analysis.

The request also specified that Mr. Gibson was a patient of Ochsner Medical Center from May 29, 2011, through December 19, 2011, but did not allege that he received negligent medical treatment during that time period.

Mrs. Gibson's amended request is dated the same date as her initial request, December 19, 2012, but the receipt stamp of the Commissioner of Administration shows that it was received by that office on January 30, 2013

We intentionally use the singular when referring to the survival claim, because, although multiple claimants may have the right, acting alone or jointly, to assert the claim depending upon the decedent's particular circumstances as to his survivors, as a derivative claim, it is a single claim which seeks to recover "all damages for injury to [decedent's] person, his property or otherwise, caused by the offense or quasi offense." La. C.C. art. 2315.1(A). The object and nature of the recovery sought is identical, regardless of if the injured party himself brought a claim for those damages during his lifetime (i.e. , a traditional tort suit), or if the claim is brought by his statutorily designated survivors after his death (a survival claim), or if an additional statutorily designated claimant belatedly joins the litigation to pursue the claim. In effect, the codal article on survival claims provides for the substitution of designated claimants to the rights in a cause of action of a tort victim who dies, with particular restrictions on who may assert the claim and the timeframe within which they must do so.

Mrs. Gibson is not mentioned at all in Thomas and Barbara's petition for damages.

Ochsner attached as exhibits to its memorandum in support of its exceptions Mrs. Gibson's initial and amended requests for a medical review panel and the opinion of the medical review panel. No objection was made to these attached exhibits.

Although the written judgment, prepared by counsel for Ochsner, deemed the judgment a final judgment under La. C.C.P. art. 1915 and subject to immediate appellate review, because the judgment does not dismiss any party or any claim from this litigation, we do not find it to be a final judgment and therefore we properly review this matter under our supervisory jurisdiction rather than our appellate jurisdiction.

Contrary to Ochsner's assertion that only the First and Fourth Circuits have addressed this issue, the Third Circuit has also addressed this issue and held in accordance with the Fourth Circuit. See Guffey v. Lexington House, LLC , 18-475 (La. App. 3 Cir. 8/22/18), 254 So.3d 1. Although the Louisiana Supreme Court reversed the Third Circuit on a different issue, the Supreme Court indicated that because it found that the filing claimant was not a proper claimant, and prescription was therefore not suspended as to anyone by the filing of her request, it "need not reach the issue of whether the timely filing of a claim by a proper claimant suspends prescription for any other, un-named claimants." Guffey v. Lexington House, LLC , 18-1568 (La. 5/8/19), --- So.3d ----, 2019 WL 2041788.

On a writ application from the denial of an exception of prematurity filed by the defendants in the lawsuit, the First Circuit reversed the trial court and remanded with instructions to stay the lawsuit pending presentation of the claim to a medical review panel.

By this time, Mr. Parks' widow was also deceased.

We note that with respect to the Parks' survival claim, which is a derivative claim shared by multiple individuals that has as its object the identical claim brought by Mr. Parks on his own behalf (i.e. , recovery of all damages for injury sustained by Mr. Parks prior to his death caused by the wrongful conduct), the result of the First Circuit's decision is that the Parks' survival claim is prescribed in their lawsuit, but they are able to pursue that identical claim by substituting themselves as party plaintiffs for Mr. Parks in the initial lawsuit that he filed.

The Court first noted that the LMMA now requires that the complaint contain the "names of the claimants," but acknowledged that that provision was not in effect at the time that Mr. Parks filed his request for review.

La. R.S. 40:1299.47(A)(2)(a) has been redesignated as La. R.S. 40:1231.8(A)(2)(a).

We note that this provision is not a mandate for the medical review panel to quantify the damages of claimants should it find that there are such damages caused by negligent conduct of the defendant; rather, it is a mandate that the medical review panel express its opinion as to whether any negligent conduct of defendant caused, or contributed to, any injury to, and/or the death of, the patient.

The only time constraint on substitution is when the opposing party requests the issuance of a summons to the legal successor to appear and substitute himself for the deceased party. See La. C.C.P. arts. 802 -804. We find no evidence in the record before us that Ochsner made any such request.

We note that this is the same result allowed by the trial court in Parks when it sustained the defendants' exception of no right of action but gave the plaintiffs fifteen days to "cure the defect" by substituting themselves for Mr. Parks in the lawsuit he filed.

Although Thomas and Barbara, in their pro se petition, did not clearly articulate that they personally suffered damages, due to their reference to the "wrongful death" of their father and their specific citation to La. C.C. art. 2315.2, we nevertheless conclude that their wrongful death claims were sufficiently pled.